## LOVE VS. THE STATE.

Confessions are not admissible against a party charged with crime, unless freely and voluntarily made, and the onus is upon the State to prove them of this character.

When the original confession has been made under illegal influence, such influence will be presumed to continue and color all subsequent confessions, unless the contrary is clearly shown.

*Appeal from Washington Circuit Court.*

Hon. J. M. WILSON, Circuit Judge.

FAUST, for the appellant.

When a prior confession is proved to have been obtained by improper means and influences, all subsequent confessions are deemed subject to the same influence, unless it is clearly shown to have been removed. *Wheeler's Am. Cr. Law* 257 ; *Russ. on Cr.* 832–3–4 ; *State vs. Guild,* 5 *Halst.* 163, 179 *to* 182 ; 1 *Greenf. Ev.* 282.

Whether a confession is voluntary or not is a question of law for the court, not of fact for the jury to determine. *Hector vs. State,* 2 *Mo.* 135 ; *Knapp's case,* 10 *Pick.* 495 ; *Am. Cr. Law* 258 ; *Russ. on Cr.* 832.

HOLLOWELL, Attorney General, for the appellee

The presumption of the continuance of the influence under which the first confession was made, was rebutted by the proof ; the subsequent confessions were admissible in evidence. *East's P. C.* 658 ; *Ros. on Cr. Ev.* 30 ; *Whar. Cr.* 257.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

Without any discussion it may be taken to be the general

rule, and well settled by the authorities, that no confession of a crime can be given in evidence against a defendant, unless it was freely and voluntarily made, and that such must be shown to be the character of the confession, before the prosecution can use it as evidence. 1 *Greenleaf's Ev. sec.* 219 ; *The State vs. Guild*, 5 *Halst.* 180 ; 1 *Ph. Ev.* (*4th Am. Ed.*) 542. Where confessions have been made under the influence of threats or promises, and are, therefore, inadmissible in evidence, it is often to be ascertained, whether subsequent confessions are to be traced to the same influences of fear and hope, that may induce the party to persevere in a false confession, and are therefore inadmissible, or whether they are to be taken as free and voluntary statements, and hence capable of being used as testimony. This is a question that can be answered only by legal authority. The following is the oldest authority to which we have been referred : " When a person has been induced to confess upon a " promise or threat, it is the common practice to reject any sub- " sequent confessions of the same or like facts, though at a sub- " sequent time." 2 *East Pleas of the Crown* 658. And the law upon this subject is clearly and fully laid down by a writer of high authority : " If a confession has been obtained from the " prisoner by undue means, any statement afterwards made by " him under the influence of that confession cannot be admit- "ted as evidence." *Russ. on Crimes* 832: And further, on page 835, we read : " But although such improper inducements may " have been held out to a prisoner, as would exclude a confes- " sion made under their influence, yet if the court taking into " consideration all the circumstances of the case, should be of " the opinion that, at the time the confession was made, such " inducements had ceased to operate upon the mind of the pri- " soner, such confession will be admissible. In determining " when an inducement had ceased to operate, it will be mate- " rial to consider the nature of such inducement, the time " and circumstances under which it was made, the situation of " the person making it, the time which has intervened between " the inducement and the confession, and whether there has

22

" been any caution given, and if so, whether the caution has
" been given generally, or expressly and specifically with refer-
" ence to the inducement held out." And the general rule is,
that when a prisoner has been induced by promises or threats
to make a confession, which is for that reason inadmissible, the
influence of the motives prompting the confession will be pre-
sumed to continue, and to have produced the subsequent con-
fessions, unless the contrary is shown by clear evidence. 1
*Greenleaf's Ev.*, s. 221 ; 1 *Ph. Ev.* 551; (*4th Am. Ed.*) *and note*
157, *page* 553.

Such being the law, its applicability to the facts of this case
remains to be seen."

The defendant was tried for the murder of Oschner, at the
April term '60, of the Circuit of Washington county, and was con-
victed of murder in the first degree, solely upon evidence of his
confessions of the crime. A crowd of persons, one hundred and
fifty, or two hundred in number, were assembled at the place
where Oschner's dead body was found, and the avowed object
of the assemblage was to ascertain the murderer. A general
committee of twenty was formed to give shape and concert to
the efforts to be made for the discovery of the perpetrator of the
crime ; by whom a special committee of three was detailed to
prosecute the enquiry. Suspicion being fixed upon the defen-
dant, he was sent for, was brought to the place of assemblage,
was put in charge of the committee of three, was taken away
from the crowd, was told that the committee were satisfied that
he had killed Oschner, and that it would be better for him to
confess, that his brother had confessed, and a written statement
of his was read to him. Kidd, one of the committee, told the
defendant that the committee would do all they could to save
him, although they did not know that they could do so, that he
was not the person they were after, but that such person was
Ackridge, who they believed had instigated the defendant to
commit the murder. Up to this time the defendant denied the
charge, when he was confronted with his brother, who had made
the written statement mentioned, and who said to the defen-

dant concerning it: " Jarrett you know it is true." Then the defendant confessed the murder, after having for a half or three quarters of an hour protested his innocence, and after he had been assured of protection by the committee. Bean, another of the committee of three, testified, substantially, to the same facts as Kidd, and said further, that the defendant seemed to be afraid of Ackridge, from whom the committee promised he should be protected, as also from every body else, who might be incensed at him, or should desire to injure him on account of his confessions.

These confessions were made the day before the defendant was taken to Fayetteville, where he was confined for a month in default of bail of five hundred dollars, which the magistrate exacted of him for his appearance as a witness against Ackridge. During the month that the defendant was confined in Fayetteville, he made frequent confessions like the one he made to the committee, always admitting that he shot Oschner, that he did it at the instance of Ackridge, who was to give him fifteen dollars for the deed—these confessions are spoken of by the persons to whom he made them, as being made freely, without any promise or threat from them, but without caution by them, or either of them, to the defendant, against the consequences of the confessions.

These latter confessions made at Fayetteville, if the only confessions that had been made by the defendant, would have been evidence against him, according to the law as defined by Greenleaf, and as applied by this court, though the defendant was not warned that his confessions would be used against him. 1 *Greenleaf's Ev.* s. 229 ; *Austin vs. State*, 14 *Ark.* 562. Yet it will be remembered that the American text writer carries the admissibility of confessions further than the English writers, and to an extent that this court, in the case cited, expressed a disinclination to follow, except upon a close examination of the authorities.

By all the authorities, the confessions made to the committee were inadmissible, and this was taken for granted by the

prosecution in this case, which made no attempt to introduce them, but confined itself to the Fayetteville confessions. But we have seen that they were incompetent evidence on account of the incompetency of the first confessions, unless it had been clearly shown by other evidence, that the influences, which induced the first confessions, had ceased to operate upon the mind of the defendant. There is no such proof in the case. On the other hand, every circumstance connected with the defendant's stay at Fayetteville, and with the confessions made by him there, confirm the idea that he was relying upon the promise of protection he had received from the committee of three, and which he might also hold to be a compact between himself and the assemblage which the committee represented. He was not proceeded against himself; being detained only to be a witness against Ackridge, he might regard his detention without any charge being made against him, as the fulfillment of the promise of protection made to him, as a confirmation of the assurance made to him by the committee, that it was not himself, but Ackridge, that they wished to see punished, while his continued confessions might be regarded as in performance of his part of the agreement with the committee.

We are clearly of the opinion, that the confessions made at Fayetteville ought to have been excluded from the jury; and for the reasons assigned by the defendant, that the first confession was made under the influence of fear, and the hope and promise of protection, and that such influence was presumed to continue to the time of the subsequent confessions, unless shown to have been removed, and that there was no evidence tending to show the removal of such previous influence. 1 *Ph. Ev.* (*4th Am. Ed.*) 543, *with the previous authorities ; Regina vs. Besinell,* 1 *Car. & Marsh.* 558.

The third instruction moved for by the defendant presented nearly the same question as the motion to exclude the Fayetteville confessions, in the form of a declaration of law to the jury. Even conceding that the subsequent confessions might go the jury, the court was wrong in rejecting the third instruc-

tion as it correctly stated the law.   We do not set forth the instructions, not thinking it necessary for an understanding of the point, but it was the converse of the following proposition, which the court upon its own motion, and against the objection of the defendant, submitted to the jury : " That it had been argued by " the counsel for the defendant, that after it has been shown " that confessions were made by the defendant under the influ- " ence of fear or hope, that the impressions so made are pre- " sumed to remain on the mind of the defendant at the time of " making the subsequent confessions, unless shown to have been " removed ; but that such was not the law.   That the confes- " sions made before the defendant was brought to Fayetteville, " were not before them, and that they had nothing to do with " them in considering the confessions introduced and given in " evidence by the State."

We cannot conceive of any proposition advanced as law, more inconsistent with legal principle, or more against the current of legal authority.   How different is this charge from one given in a case where the subsequent confessions were allowed to go the jury :

" It is said that all subsequent admissions of the same or of " like facts, should be overruled, because they may have pro- " ceeded from the same influence.

" Confessions have been admitted before you by the court, of " the same or of like facts, made afterwards, (some months after- " wards,) and which by the application of the above principle " in its full extent, would have been rejected.   These latter " confessions were received, because the court deemed that al- " though an original confession may have been obtained by im- " proper means, subsequent confessions of the same or of like facts " may be admitted, if the court believe from the length of time " intervening, from proper warning of the consequences of con- " fession, or from other circumstances, that the delusive hopes " and fears, under the influence of which the original confes- " sion was obtained, were entirely dispelled.   Under this im- " pression of the law, the court with some hesitation, admitted

" the confessions ; and having been admitted, it is your duty to
" consider them ; and to consider with reference to the manner
" in which the first confession was obtained ; and if you are
" not satisfied that these latter confessions were made freely
" and unhesitatingly, and wholly free from any expectation of
" benefit, raised by the hopes and promises preceding the first
" confession, or from his continuing to tell a uniform story,
" it is your duty to reject them from your minds, and not to make
" them the foundation of yonr verdict.

" Under all the agitation, fears and possible, if not probable
" hopes, produced by these circumstances, he made his first con-
" fession, and immediately after, the one before the magistrate.
" The court thought these first confessions, thus obtained, should
" be overruled.

" You will next call to mind the circumstances calculated to
" remove this influence, if it existed, and make the subsequent
" confessions lawful. These latter confessions were made in
" February, 1828, some months after the first: but you will re-
" collect that they were made after an interval of silence, and
" under new circumstances, and in a new situation ; but the
" boy was taken to gaol, and there was a continued series of
" conversations and confessions, without lapse of time or other
" favorable circumstance to bring him to reflection upon his
" awful situation, or the danger of these unguarded and thought-
" less confessions." *Sta'e vs. Guild,* 5 *Halst.* 172, 173.

In this case, there were no circumstances, such as length of
time, an interval for reflection, a criminal accusation, informa-
tion or warning not to depend upon the promises of protection the
defendant had received, or any thing else tending to break the
uniformity of the confessions he had made to the committee;
but the natural effect of his condition, and of all the attendant
facts disclosed in the transcript, was to induce him to a con-
tinuance of the confession, his fears of a summary punishment
from an exasperated community, and of private injury from
Ackridge, and his hopes of protection from all these impending
evils, had extorted from him. Hence, in this case, the subse-
quent confessions after proof of the original confession and its

circumstances, should have been excluded from the jury. But if admitted, law and humanity required that the last confessions should be taken with the first, and with instructions that they should be disregarded, unless found to be free from the influences which produced the confession to the committee.

Confessions are rejected or received in evidence with caution, not from tenderness which the law has for the life or liberty of an alleged criminal, although such is deemed innocent until proved to be guilty, but because the law does not wish a man to be convicted upon false testimony, and because it distrusts the truth of confessions extorted by fear, or induced by the hope of avoiding an accusation, or escaping an apprehended punishment. Every man can but hope that the defendant's confession should be disbelieved, or distrusted as being false, or not to be depended upon as true. For it is humiliating to human nature, alarming to human life, to think that there can be a man in a christian country who would buy or take the blood of a fellow creature, and for the paltry pittance mentioned by the defendant in his first and after confessions. If such be true, it is greatly to be regretted that the law could not speedily take away the power to commit crime, for inducements to its commission will never be wanting to persons so easily tempted.

But it is in precisely such cases, where the atrocity of the crime makes the criminal abhorrent, that the safe-guards of the law must be well protected, that the just punishment of the guilty may not be a precedent or excuse for the illegal conviction of the innocent. Doubtless an adherence to such rules of law as the court below failed to observe, and as we are called upon to enforce, may sometimes screen the undeserving from merited punishment; but there is no safety for the greater portion of society, that is, the observers of the law, without preserving with strictness the integrity of legal rules that protect against perjury and wickedness, as well as against the weakness of those who are wrongfully suspected or accused of criminal acts.

Let the judgment of the Circuit Court of Washington county be reversed, and the defendant's motion for a new trial be sustained, that he may be tried upon legal evidence.