· CORLEY v. STATE.

| 50 | 305 |
| 53 | 166 |

| 50 | 305 |
| 66 | 61 |
| 66 | 63 |
| 66 | 509 |

| 50 | 305 |
| 69 | 602 |

| 50 | 305 |
| 73 | 190 |
| 74 | 399 |

1. CONFESSIONS: *Admissibility of: Finding and conclusion of trial judge: Practice on appeal.*

Whether a confession of guilt is voluntary or not is a mixed question of law and fact to be determined by the court. The trial judge's finding of facts in determining such question is as conclusive on appeal as his findings in other cases, when discharging the function of a jury. But the conclusion to be drawn from the facts is a question of law reviewable on appeal.

2. SAME: *Same: Official inducement.*

A confession, to be admissible, must be free from the taint of official inducement proceeding either "from the flattery of hope or the torture of fear;" and where it is fairly traceable to such influence, a failure to exclude it is error, for which the judgment may be reversed.

Corley v. State.

3. SAME: Same.

The defendant was suspected of complicity in a larceny, and a fruitless effort was made by means of threats, entreaties and finally by placing him under arrest, to obtain from him information concerning the crime. He was released, protesting his innocence, but was afterwards summoned before the grand jury to testify as to the same offense, and repeated there the assertion previously made that he was ignorant of the whole matter, . The grand jurors were persistent in their efforts to get from him some intimation as to the crime, and he was before them at different times on three successive days, remaining under guard subject to their order. He finally gave evidence of breaking down, and expressed a fear of violence at the hands of persons who might be implicated by his testimony. The jurors exhorted him to tell the truth and promised him protection. He then made a statement implicating others in the offense, and was removed from the grand jury room under a guard furnished at his request, and who were instructed to allow no one access to him. While thus awaiting the further direction of the grand jury he was visited by the prosecuting attorney, who assured him that if he would tell the whole truth the state would deal fairly with him. The next morning, while waiting to be called before the grand jury, three persons, who afterwards became witnesses against him, were admitted to him, and referring to his statement previously made before the grand jury, told him he ought to tell the whole truth. He replied that he was going to do so, and produced a confession which he had written out for the grand jury and read it to them, saying he had not intended to tell anything until he got before the grand jury, where he could get protection. On the trial of an indictment charging the defendant with the larceny referred to, the court, against his objection, admitted in evidence the confession then made. *Held:* That such confession was fairly traceable to the hope inspired by the assurances of the grand jurors and prosecuting attorney, and should have been excluded.

4. INDICTMENT: *Charging one offense in different modes: Election between counts.*

An indictment charged the defendant in one count with having himself been the actor in the commission of a larceny, and in another count with having advised, encouraged and aided others to commit it. *Held:* That the indictment charged but one offense, and it was not error to refuse to compel the prosecuting attorney to elect to stand on a single count.

APPEAL from *Logan* Circuit Court.

JAMES F. READ, Special Judge.

*T. C. Humphrey*, for appellant.

1. Under the circumstances detailed in this case, the confession of appellant was not admissible in evidence. It was the result of threats, entreaty, promises of leniency, and protection by officers of the law.   15 *N. Y. Ct. App.*, 384.   The *smallest inducement* held out to the prisoner by

those in authority, excludes the confession as not volun-
tary. *Whart. Cr. Ev., note* 1, *p.* 670 ; *Ib., secs.* 646, 671,
677 ; 22 *Ark.,* 336.

2. The appellant was entitled to prove the influences
operating on him to induce the confession. 43 *Ark.,*
100 ; 22 *Id.,* 336.

3. The indictment charged more than one offence, and
the state's attorney should have been required to elect
upon which count he would prosecute.

*Dan W. Jones,* Attorney General, for the State.

1. The indictment charges only one offence, though al-
leged to have been committed in different modes and by
different means. *Mansf. Dig., sec.* 2108 ; 32 *Ark.,* 203 ; 34
*Id.,* 433 ; 38 *Id.,* 556.

Appellant's confessions were voluntary and admissible.
34 *Ark.,* 650. The fact that he was in custody at the
time does not render his confession inadmissible. 35
*Ark.,* 35 ; 19 *Id.*; 156 ; 14 *Id.,* 556.

Whether the confession was voluntary or not is a ques-
tion for the trial court to determine, and its rulings will
not be reversed unless shown to have been arbitrary and
an abuse of its powers. 28 *Ark.,* 121.

COCKRILL, C. J. The principal question in this case is
as to the admissibility of the confession upon which the
prisoner was convicted.

The rule is established in this state, in accord with the
unvarying current of authority elsewhere, that a confes-
sion of guilt, to be admissible, must be free from the
taint of official inducement, proceeding either " from the
flattery of hope or the torture of fear." *Austin v. State,*

1. CONFES-
SIONS:
Admissi-
bility of:
Official in-
ducement.

14 *Ark.*, 555; *Meyer v. State*, 19 *Id.*, 156; *Butler v. State*, 34 *Id.*, 480; *Ford v. State, Ib.*, 649; *Yates v. State*, 47 *Id.*, 172. Whether or not a confession is voluntary, is a mixed question of law and fact to be determined by the court. It is the duty of the trial judge to decide the facts upon which the admissibility of the evidence depends, and his finding is conclusive on appeal as it is in other cases where he discharges the function of a jury. *Runnels v. State*, 28 *Ark.*, 121; 1 *Greenl. Ev., sec.* 219. The conclusion to be drawn from the facts is a question of law, and is reviewable by the appellate court. *State v. Andrews*, 62 *N. C.*, 205; *State v. Efler*, 85 *Ib.*, 585. If the confession is fairly traceable to the prohibited influence, the trial judge should exclude it, (*Love v. State* 22 *Ark.*, 336; *State v. Phelps*, 11 *Vt.*, 116, *S. C.* 34 *Am. Dec.* 672;) and his failure to do so is error for which the judgment. may be reversed.

The defendant objected to the introduction of the confession in this case; the jury was withdrawn and the court heard the evidence that led to the confession, to determine whether it was admissible in evidence. This was the approved practice.

It was made to appear that the prisoner had been suspected of complicity in rifling the county treasurer's safe. He was himself deputy treasurer, and knew the combination of the lock at the time the contents of the safe were stolen. The evidence tended to show that the safe had been unlocked, the money removed, and the locks broken afterwards as a blind to detection. The prisoner had been entreated, threatened and finally arrested to induce him to tell about the offence. He firmly protested his innocence and utter ignorance of the whole matter. He was released from arrest. Finally

the grand jury met and summoned him before them. He still asserted ignorance of the perpetrators of the crime. The grand jury persisted in the effort to extract some intimation from him that might serve as a clue to unravel the mystery. He was before them at different times on three successive days, and remained under guard subject to their order. The record does not purport to set the facts out in the order of their occurence, and there is a slight mist of uncertainty as to the sequence of the representations made to the defendant by different members of the grand jury and others, while he was in the custody of the officer in whose presence the confession, which was received in evidence, was finally made.

It seems that after a time the defendant gave evidence of breaking down. The grand jurors pressed the opportunity and exhorted him to tell the truth. He expressed a fear of personal violence at the hands of those whom his testimony might implicate. Grand jurors promised him protection. Two of the three members of that body who testified, insisted that the protection promised was protection only from personal violence such as one citizen might give to another; and one of them said the defendant was informed that the jury regarded it as their duty to indict him, and expressed the opinion that the prisoner must have known he would be indicted; but the same witness testifies that when they promised him protection they did not explain what kind of protection was meant; and the third witness, who was the foreman, testified that if he had been in the prisoner's place he would have understood the promise and assurances of the grand jury to mean that he was not to be prosecuted. The defendant, at this juncture, made a statement implicating others in the offence, making an effort still to shield him-

self.  He was then removed from the grand jury room under a guard furnished at his request to protect him from violence, to await the further direction of the grand jury, the foreman instructing the guard to allow no one access to him.  In this interval, as we understand it, the prosecuting attorney sought him and assured him that if he would tell the whole truth the state would deal fairly with him.  The next morning, while waiting to be called before the grand jury, Grady, Chitwood and Taylor—the witnesses who testified to his confession—were admitted by his guard to his presence.  They told him that they understood he had made a statement to the grand jury about the safe robbery which was not regarded as satisfactory; the spokesman informed him that it did not clear up some persons who were suspected, and that he ought to tell the whole truth, let the guilt rest where it might.  The prisoner replied that that was just what he was going to do, and produced a statement which he had written out on a pocket memorandum book, making the confession which was given in evidence and read it to them.  He stated that it was prepared for the grand jury, and that he had previously made up his mind not to tell anything until he got before the grand jury, where he could have protection.  He was called at once before the grand jury where he made the same statement.  When informed by them that he was to be indicted he expressed great surprise.

The court refused to permit anything which transpired in the grand jury room to go to the jury, but admitted the statement made to the three witnesses named.  The confession made to these witnesses is, we think, fairly traceable to the hope inspired by the assurances made by the grand jurors and prosecuting attorney.  These officers, in their commendable zeal to ferret out the perpe-

trators of the crime, evidently led the prisoner to expect favor from his confession. It was the natural consequence of the course pursued that such an impression should rest upon his mind. It is true one of the witnesses testified that he was satisfied the prisoner understood all the while that he was to be indicted, but none of them testified that a hope of leniency in the prosecution was not fairly deducible from what transpired in the jury room alone ; and the foreman felt sure that no other conclusion could have been reached by the prisoner. If a doubt remained in the prisoner's mind after the first day's experience, it must have been dispelled by the assurance he then received from the state's attorney. What could he have inferred from that except that a further and fuller statement would be followed by leniency, or an exemption from prosecution? The assurance that he would be dealt with fairly at the hands of the state, cannot be interpreted as merely a guarantee that he should not thereafter be cheated of his legal rights. The integrity of the state's official, and the protection which the most wretched feels the courts will afford him, was sufficient guaranty of that favor. The prisoner must have taken this last assurance as a sanction of the hope he understood the grand jurors were holding out to him. By all the opinions, arousing an expectation of clemency by a prosecuting officer will exclude the confession. 1 *Bish. Cr. Pro*, sec. 1234; *Sumner v. State*, 61 *Miss.*, 256; *Commonwealth v. Nott*, 135 *Mass.*, 269; *Owen v. State*, 78 *Ala.*, 425; *Beggarly v. State*, 8 *Baxt.*, [*Tenn.*] 520; *Hopt v. Utah*, 110 *U. S.*, 574.

It is not material whether the prosecuting officer knew the grand jury had inspired a hope which his language would inflame, or that the grand jury were informed that the officer would talk, or had done so, with the pris-

oner. The test is, was there a causal connection between the hope aroused and the confession ? The fact that the confession is not made to the officer or officers who generated the hope is immaterial. When the improper influence has been exerted it must be shown by the state that it has been removed before a subsequent confession is admissible. *Wharton Cr. Ev.*, sec. 650 ; 1 *Bish. Cr. Pr.*, sec. 1239 ; *Commonwealth v. Taylor*, 5 *Cush.*, 605 ; *Simmons v. State*, 61 *Miss.*, 256. That was the main question determined in *Love v. State*, 22 *Ark.*, sup.

Experience has shown that reliance cannot be placed upon admissions of guilt obtained by thus playing upon the hope or fear of the accused, " for the obvious reason," says Judge Cooley, " that they are not made because they are true, but because, whether true or false, the accused is led to believe it is for his interest to make them." *People v. Wolcott*, 51 *Mich.*, 612.

It is in cases where the atrocity of the crime, or the gross abuse or violation of a trust, as in this case, makes the prisoner abhorrent, " that the safeguards of the law," says Mr. Justice Fairchild, in *Love v. State*, *supra*, " must be protected, that the just punishment of the guilty may not be a precedent or excuse for the illegal conviction of the innocent. Doubtless an adherence to such rules of law as the court below failed to observe, and as we are called upon to enforce, may sometimes screen the undeserving from merited punishment; but there is no safety for the greater portion of society, that is, the observers of the law, without preserving with strictness the integrity of legal rules that protect against perjury and wickedness, as well as against the weakness of those who are wrongfully suspected or accused of criminal acts." The facts bearing upon the question of the admissibility of

the evidence in this case are undisputed, and the court erred in its conclusion to admit the confession.

Other questions raised upon the trial have been urged by the appellant, but as they have become immaterial, or have not been argued by the attorney general, and the cause must, in any event, be remanded, we have not considered them.

The objections raised to the indictment have received consideration such as every case involving the liberty of a citizen deserves, but we think them technical and without merit or authority to sustain them. The most important is, that in one count of the indictment the defendant is charged with having himself been the actor in the larceny, and in the other with having advised, encouraged and aided others in the commission of the offence. The prosecuting attorney disclaimed the intention to prosecute for more than one offence, and the court declined to compel him to elect to stand on a single count. This is familiar practice where the indictment charges one offence in several modes. It is not permissible where distinct offences are joined. *Ball v. State*, 48 *Ark.*, 94. One offence only is charged in this indictment. To cause a thing to be done is the same in law as to do it, and it is only different modes of alleging the same thing to say that the defendant did it and that he aided another to do it. For the purpose of punishment an accessory is a principal under the statute—it is necessary only to inform him of the facts in the indictment as to his connection with the crime, in order that he may prepare his defence against the specific charge. *Mansf. Dig.*, secs, 1505–11; *Williams v. State*, 41 *Ark.*, 173.

Reverse and remand for a new trial.

4. INDICT-MENT: Charging one offense in different modes: Election between counts.