PAYNE *v.* STATE.

4846                                        295 S. W. 2d 312

Opinion delivered November 5, 1956.

[Rehearing denied December 3, 1956.]

*Wiley A. Branton,* for appellant.

*Tom Gentry,* Attorney General and *Thorp Thomas,* Asst. Atty. General, for appellee.

PAUL WARD, Associate Justice. Appellant, Frank Andrew Payne, was charged by information with the murder of J. M. Robertson on October 4, 1955. A jury found him guilty of murder in the first degree and fixed his punishment at death by electrocution. For a reversal, appellant sets forth a number of objections and alleged errors in his Motion for New Trial. We have given careful consideration to each one of the above assignments, some of which will be disposed summarily, but we will discuss hereafter in some detail only those assignments of error which appear to have merit and those upon which appellant places the greatest emphasis.

1. The trial court overruled appellant's motion to quash the information, and two grounds are here relied on to show error.

(a) It is contended by appellant that Amendment No. 21 to the Constitution of this State, substituting an information by the prosecuting attorney for an indictment by the grand jury, violates the 5th and 14th Amendments to our Federal Constitution. This question has already been passed on contrary to appellant's contention (as admitted by appellant) in the case of *Penton* v. *State*, 194 Ark. 503, 109 S. W. 2d 131 and affirmed in *Smith & Parker* v. *State*, 194 Ark. 1041, 110 S. W. 2d 24. We now assert, as was stated in the latter mentioned case in referring to the former mentioned case, that: "There is no reason at this time to re-examine and restate our conclusions reached in the case above. That opinion is controlling on this case."

(b) Notwithstanding the above, appellant makes the further contention that the information in this case should have been quashed because it is undisputed that it was issued before there had been a preliminary hearing. In support of this contention appellant apparently relies on Ark. Stats. § 43-806 which provides that when a defendant has been held to answer at a preliminary examination the prosecuting attorney may file an information. The section referred to is a part of Act 160 of the Acts of 1937 which was passed to implement Amendment No. 21 referred to above and was not meant

to be a limitation on the powers granted by the amendment. This court definitely settled the question against appellant's contention in the *Penton* case, *supra,* at page 513 of the Arkansas Reports, where it was stated:

"The principle distinction between provisions of § 1 of Amendment 22 to the Constitution of Arkansas, and the provision of California's Constitution authorizing prosecutions under information, is that as a condition precedent to the validity of prosecutions on information in California, there must have been examination and commitment by a magistrate. Omission of this requirement from the Arkansas Amendment does not deprive the accused of the rights of due process guaranteed under the Constitution of the United States."
Our Amendment No. 21 (referred to above as 22) says nothing about a preliminary hearing.

2. It is ably and earnestly insisted that the trial court erred in admitting in evidence a confession made and signed by appellant. This argument is based on the contention that appellant was mistreated and that he was induced by fear and intimidation to make the confession. After careful consideration we are unable to agree with appellant.

Robertson was killed about 6:00 P. M. on Tuesday, October 4, 1955, and appellant was arrested the next morning and placed in the city jail at Pine Bluff. He was taken early the next morning, October 6th, to Little Rock for a lie detector test and was returned to Pine Bluff that afternoon and replaced in the city jail. The next day, October 7th, at about 1:00 P. M. he was taken to the county jail and his confession was made, signed and witnessed at about 2:00 P. M. Later that same afternoon he was taken, presumptively for security purposes, to the county jail at Dumas where he spent the night but was returned to Pine Bluff on the following morning. On examination appellant testified that he was not given anything to eat, that his clothes were taken away from him, that (in effect) he was threatened with the result of mob violence if he did not confess and that some of his relatives were arrested. He stated

that while in the jail at Dumas he was reminded of the fate of a Negro boy in Mississippi. We here note that appellant was a Negro, 19 years of age.

A great deal of testimony was taken relative to the alleged threats and mistreatment, and the circumstances attending the confession. A careful consideration of this testimony convinces us that the confession was properly allowed in evidence. Several witnesses were present when the confession was made and they all testified that, at no time, were there any threats or any mistreatment of the appellant. In the confession itself appellant states that he was not in any way mistreated. The State Police Sergeant who took appellant to Little Rock admits that they took his shoes and socks off before they left Pine Bluff and that they removed his pants and shirt after he arrived at Little Rock, all for the purpose of laboratory examinations. The sheriff admits that shortly before the confession was actually given he merely informed appellant that there were several people outside the jail. His explanation was that appellant had already indicated he wanted to make a confession and the sheriff thought it would be better to have the confession made in private, having in mind the safety of appellant. Any statement that might have been made to appellant while in jail at Dumas could not have influenced his confession which had already been made the day before. Before the trial court decided to admit appellant's confession in evidence he heard voluminous testimony, in chambers, from all of the officers and people who had been in contact with appellant during his period of confinement before the confession was made. All of them deny that appellant was mistreated in any way or that he was in any way threatened. This procedure was approved in *McClellan* v. *State*, 203 Ark. 386, 156 S. W. 2d 800, and we are convinced that the confession was properly introduced in evidence. It is true that some of appellant's relatives were arrested soon after he was taken into custody but, as explained, this was done in an effort to prevent the money which appellant was supposed to have taken from the deceased from being disposed of.

3. While Sergeant Buck Halsell was on the stand the prosecuting attorney asked this question. "Sergeant Halsell, I believe you stated that you were active in the investigation of the murder of J. M. Robertson. A. That's right." The attorney for appellant objected to the question on the ground that "it hasn't been established there was a murder yet." The prosecuting attorney replied that "I believe it was established in his opening statement." The court then instructed the attorneys to go ahead and there were no further objections. We are not convinced that this incident materially prejudiced the rights of appellant or that it calls for a reversal. It is reasonable to suppose that the jury understood that the prosecuting attorney was merely asking the witness if he had been active in the investigation of the death of Robertson.

4. After the State had rested its case late in the afternoon the court recessed for 5 minutes in order to take up some motions presented by the defendant. After this was done the attorney for appellant made this statement:

"Mr. Branton: The defendant at this time notes that it is a quarter of five and the defendant requests that the Court recess until tomorrow morning to allow the defense attorney time to consult with his client and further prepare for the defense of the defendant in this case.

The Court: I think we ought to finish this testimony this evening if we can—if we can't, well, all right; I think you are entitled to a few minutes, but not the rest of the day and tonight.

Mr. Mullis: If the Court please, I object to that motion — I would like to get the testimony in for this reason, there are several witnesses here now who are being held and are holding up another Court.

The Court: The Court is familiar with that. If you want a few minutes we will get out and let you have your client and let you do what you want to, but I think

we should finish this testimony this afternoon, this afternoon or tonight, if we can.

Mr. Branton: I would like a few minutes.

The Court: I rule we are going to finish the testimony if we can.

Mr. Branton: I object to the ruling of the Court as to the recess.''

Under this state of the record we see no error in the court's refusal to grant a recess until the following day. It will be noted that appellant's attorney gave no special reason for asking the court to adjourn other than to consult with his client and further prepare for his defense. It was not stated or shown in what way appellant would be prejudiced by the court's refusal to grant the recess. This court in the case of *Edwards* v. *State,* 171 Ark. 778, 286 S. W. 935, held that it was not error for the court to refuse a postponement of a trial for a few hours until some of defendant's witnesses should arrive, where the defendant had announced ready for trial without such witnesses being present.

5. After both sides had rested, but before the case was submitted to the jury, late in the afternoon the court permitted the jurors to separate and go to their several homes. It is objected by appellant that this was error although he admits that it is a matter of discretion with the court. Ark. Stats. § 43-2121 specifically provides: ''The jurors, before the case is submitted to them, may, in the discretion of the court, be permitted to separate . . . '' In *Hamilton* v. *State,* 62 Ark. 543, 36 S. W. 1054, this court said: ''Permitting the jury in a murder case to separate before the case was finally submitted to them is not reversible error where no prejudice is shown.'' It is not disputed that no such prejudice is shown here.

In this connection it is also contended that the court did not properly admonish the jury before they separated, but we think no reversible error appears. This contention is based on Ark. Stats. § 43-2122 which provides

that before each adjournment the jury must be admonished by the court "that it is their duty not to permit any one to speak to or communicate with them on any subject connected with the trial . . ." In this instance the court stated to the jury: "Remember, don't discuss the case and don't permit anyone to discuss it with you; . . ." It was not until after the jury had left the court room that appellant made any objection. It was only then that appellant's attorney made this statement: "For the record I want to object to the jury being permitted to separate for the night." We think the admonition given by the court was a substantial compliance with the statute. The record shows that the court had previously, on occasion of adjournment in this case, given the jury a full and complete admonition, and he started this one with the word "remember." If appellant thought the admonition given by the court was not sufficient, he should have so indicated at the time.

6. At the close of all of the testimony appellant made a motion for a directed verdict of not guilty which was overruled by the trial court and this is assigned as reversible error. In this connection the argument is made that the evidence is not sufficient to support the verdict of the jury. There is not merit in this contention.

We have already concluded that appellant's confession was properly introduced in testimony. In this confession he admitted that he took an iron rod and hit the deceased over the head and knocked him to the floor and then hit him several more times, and then he took money out of the cash drawer. Even without this confession there is much evidence to support the jury's verdict. Evan Reed, an employee of the deceased at the Bluff City Lumber Company, testified that he left the company office about 5:30 P. M. on the day Robertson was killed, and that the deceased and appellant were the only ones there when he left. He returned 10 or 15 minutes after 6 o'clock and found Robertson lying on the floor dead or dying. In a short while the officers found some of appellant's clothes at his residence located at 805 Birch

Street with blood stains on them. Appellant pointed out to a witness where he got the metal rod and where he placed it after he had struck the deceased. When the officers took appellant to his home, appellant told them where they would find the money. He stated that it was hidden in a piano and upon searching the piano the officers found $444. The evidence shows that this was approximately the amount which the deceased had in his office at the time. There can be no question we think, about the sufficiency of the testimony to support the jury's verdict of murder in the first degree.

7. *Discrimination.* The point which appellant stresses forcibly and ably, and which merits the closest scrutiny, is that the Negro race was discriminated against in the selection of the jury panel which tried him. His motion to quash the jury panel, and testimony supporting the same, mentions two grounds upon which error is predicated in the court's refusal to grant his motion; (a) discrimination against his race in the selection of the jury commissioners, and (b) discrimination in the selection of the jury panel.

(a) There is no merit in appellant's contention that no Negroes were selected as jury commissioners at the term previous to the one at which he was tried, or for many years previous thereto. This question was decided by this court against appellant's contention in the case of *Maxwell* v. *State*, 217 Ark. 691, 232 S. W. 2d 982. At page 694 of the Arkansas Reports we said: "Appellant further contends that he was discriminated against within the meaning of the 14th Amendment because there were no Negroes on the jury commission. We know of no rule making this requirement and the suggestion must be rejected."

(b) In support of appellant's contention that his race was discriminated against in the selection of the jury panel which tried him, substantially the following facts were disclosed: Prior to 1947 and for many years no Negroes had been placed on the regular panels of the petit jury; Since 1947 29 Negroes had served as regular members of the petit jury, during which years there

were three panels on which no Negroes served and the most that served any one year was 6; Approximately 30 per cent of the qualified electors in Jefferson County are Negroes. In addition to this, testimony of the jury commissioners who selected the panel of jurors for the term at which appellant was tried was introduced. One commissioner stated he felt that he should not select any one for the jury that he did not know and that he was limited in his knowledge of the people whom he was trying to select. He further stated: "I have lived in this county for 57 years; I think I would be as well qualified to select either white or black as anybody else." "Q. Do you know very many Negroes who would be qualified for jury service? A. I think so." It appears that he actually recommended one of the two Negroes who was selected on the panel. The second commissioner stated that he knew quite a few colored people and that he had been doing business with them quite awhile although he knew that all of them would not be qualified or eligible for jury service. The third commissioner stated that he felt that there should be some Negroes on the panel but hadn't given any thought as to whether they should be selected on a proportional basis.

The argument is advanced that the above factual situation makes a *prima facie* showing of racial discrimination for many years previous to the date of the trial, citing the case of *Green* v. *State,* 222 Ark. 222, 258 S. W. 2d 56. We do not agree. In the *Green* case it was shown that no Negro had been selected on the regular jury panel for the past 30 years, but that is not the situation here. It is shown by the testimony that the 29 Negroes who had actually served on the jury panel since 1947 did not include all the Negroes who had been selected for service. On the other hand it was shown that many others, the number undisclosed, had been selected but had not served for different reasons. The burden therefore was not on the State but on the appellant to introduce testimony showing discrimination.

We think the testimony tending to show discrimination in the case under consideration is weaker to sustain appellant's contention than that shown in the case

of *Washington* v. *State*, 213 Ark. 218, 210 S. W. 2d 307, where the court held that no discrimination existed. The cited case came to us from Jefferson County where it was tried in 1947 as a time when no Negroes had previously been selected for jury service. In holding that there was no discrimination the court, at page 223 of the Arkansas Reports, had this to say:

"But the proof in this record shows that the three Negroes were members of the regular panel of petit jurors called in the present case. They were V. T. Price, R. D. Doggett and Prince Swaizer. They were members of the regular panel, and numbered 7, 10 and 12 in the examination of jurors for trial in this case. There is no evidence even tending to show that the jury commissioners selected these three Negroes or any other members of the jury panel for any purpose other than to truly comply with the law of the land."

Based on the testimony of the jury commissioners mentioned above appellant strongly insists that this case is controlled by *Cassell* v. *Texas*, 339 U. S. 282, 70 S. Ct. 629, 94 L. Ed. 839, and should therefore be reversed. Here again we are unable to agree with appellant's contention, because we think the two cases are distinguishable on the facts. In the *Cassell* case at page 287 the court makes clear the basis of its decision where it stated: "Our holding that there was discrimination in selection of the grand jurors in this case, however, is based on another ground. In explaining the fact that no Negroes appeared on the grand jury list, the commissioners said that they knew none available who qualified; at the same time they said they chose jurymen only from those people with whom they were personally acquainted." The court further said, at page 290, "The statements of the jury commissioners that they chose only whom they knew, and that they knew no eligible Negroes . . . is discrimination in violation of petitioner's constitutional rights." In the case under consideration no such lack of knowledge is shown.

We have given careful consideration to the other objections, not discussed above, raised by appellant and

find no ground for reversal in any of them. Appellant objected to the introduction of photographs which were shown to the jury on a screen but this was a matter which rested largely in the discretion of the trial judge and we find no abuse of that discretion in this case. The same thing can be said in answer to appellant's objection to the introduction in evidence of certain articles of clothing and the iron rod heretofore mentioned. Appellant stated that he was not allowed a public trial because several Negroes were not allowed to enter the court room. Following an objection by appellant's attorney in this connection the trial judge stated that he saw no vacant seats and overruled the objection. In the absence of testimony to the contrary we must assume that the trial judge was correct and that he did not abuse his discretion.

Finding no reversible error the judgment of the trial court is affirmed.

Affirmed.