Swagger *v.* State.

4879                                         305 S. W. 2d 682

Opinion delivered October 14, 1957.

*George Howard, Jr.,* for appellant.

*Bruce Bennett,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

J. Seaborn Holt, Associate Justice. March 17, 1957, a jury found appellant, Eugene Swagger, guilty of the crime of assault with intent to kill [§ 41-606, Ark. Stats. 1957] and fixed his punishment at a term of 21 years in the state penitentiary. From the judgment is this appeal.

For reversal appellant relies on the following points: 1 and 2: The court erred in permitting the introduction in evidence the alleged oral and written confessions of the defendant. "3. The court erred in refusing to permit the defendant to pursue further the cross-examination of witness Pink Booher as to his general reputation and conduct. 4. The court erred in refusing to grant defendant permission to examine the jurors as to their intelligence of a newspaper article and radio reports of the first day's proceeding of trial and giving a history of the case, and further erred in not granting a mistrial. (5). The court erred in refusing to give written Instruction Number 3 requested by the defendant."

### 1 and 2

In these assignments appellant contends that the trial court erred in admitting his oral and written confessions in evidence, which confessions, he says, are substantially the same. We do not agree that there was error. The written confession contained these recitals:

"Statement of Eugene Swagger taken at the Jefferson County Jail, Pine Bluff, Arkansas, April 14, 1956, by Deputy Sheriff, Robert Henslee and Buck Oliger. My name is Eugene Swagger, I am nineteen years old. I live with my grandmother, Lula Gully, on Mr. Claud Bost's farm. Last year I worked for Mr. Cady around the house cleaning the yard and house. I bought a car from Mr. Wooley but Mr. Cady told me that he did not want me to have it, for it would keep me from my work. One morning Mr. Wooley came after the car and took it away. I stayed around the farm a short time and left. I came to Pine Bluff and worked for a short time. My grandmother moved with Mr. Bost after this so I went to stay with her.

"I had been worrying about the car, so last Wednesday, April 11th I had decided to go to Mr. Cady's and shoot him. I had a 12 gauge single barrel shotgun, so I hid it under the barn away from my grandmother. I wrapped a sack around it and left the house about 5:30 p.m., Friday April 13th, and walked to Joe Boundrant's store on Highway 79. I hid the gun and stayed around the store until dark, then I picked the gun up and walked up the roads and back way, to Mr. Cady's house. When I got there he and Mrs. Cady was watching television in the front room. I pulled my shoes off and waited for sometime but the room was dark and I couldn't see Mr. Cady so well. I went to the south side of the house and got a ladder, and then went to the north side of the house to the room where Mrs. Cady stayed. I cut the screen on the window and raised it. I planned to go in the house and hide until he went to bed and shoot him, but I decided that would not work. I climbed up the ladder but did not go in. I went back around the house to where Mr. Cady slept and waited for him. After while he came in the room and went to his desk then he cut the light out and went to the bed. I waited for sometime and he got up and turned the light on and walked to the desk again, and when he got through he turned around toward the bed. I was standing outside the window near his bed so I shot him through the window. I turned around and run down the road and across the field. I stopped and

put on my shoes and walked on down the road and through the fields to my home. I carried the gun to my house and hid it under the crib at the back of the house. I went in the house and went to bed. I put the shoes I was wearing in the kitchen and did not put them on again. My trousers was wet from the dew but when I got up the next morning I put them back on and was wearing them when I was arrested.

"This is all I know about the shooting of Mr. Cady, and the reason I shot him was because he did not want me to keep the car. I have not been mistreated by the officers in any way. They have not promised me anything to make this statement but I want to tell all about the planning and shooting of Mr. Cady at his house on the night of April 13, 1956. This was my way of getting even with Mr. Cady for not letting me keep the car.

/s/ Eugene Swagger."

"Witness:

/s/ Robert Henslee

/s/ Buck Oliger."

As a result of the shooting Mr. Cady was wounded in the left side of his face and body and lost the sight of his left eye.

This court has many times held that confessions to be admissible in evidence must be freely and voluntarily made without hope of reward or fear of punishment. See *McClellan* v. *State,* 203 Ark. 386, 156 S. W. 2d 800. Swagger testified that his confessions were not freely and voluntarily made, but were in effect forced from him by the arresting officer, Pink Booher, by threats and intimidation and that Booher threatened to strike him with a flashlight. Booher and other State Witnesses stoutly denied that any threats or force was used, but on the contrary that Swagger voluntarily and freely made the confession. In these circumstances the court in chambers and beyond the hearing of the jury heard the evidence relating to the substance and voluntariness of the confessions and then submitted the question, whether they had

been freely and voluntarily made, under the following proper instruction. "Instruction 21—Before a confession of a defendant can be considered by you as evidence in the case you must believe from the testimony that it was freely and voluntarily made, without any threat or fear of punishment and without any promise or hope of reward. If you believe from the evidence in this case that the confession of the defendant was freely and voluntarily made by him you should consider it along with all the testimony in the case in determining the guilt or innocence of the defendant. If you believe that the confession was not free and voluntary, that it was induced by fear of punishment or promise of reward, you should not consider it for any purpose whatever."

In a similar situation we said in *McClellan* v. *State, supra,* "This court said in the case of *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15: 'In many instances, where the accused is confronted with a confession which he cannot deny having made, he insists that it was not freely and voluntarily made. But that insistence does not render the confession inadmissible, where there is testimony to the effect that it was in fact, freely and voluntarily made. In such cases the practice approved by us, which was followed in the instant case, is for the court to hear the testimony in the absence of the jury as to the circumstances under which the confession was given, and if there is a substantial question as to whether it was freely and voluntarily made, to submit that question of fact to the jury, after admonishing the jury to disregard the confession unless it was found to have been voluntarily made.'

"The court strictly followed the above rule in the trial of the present case, and practically all the testimony shows that there were no promises made with reference to this particular case by the prosecuting attorney or anyone else. The trial judge did not pass on the question as to whether the confessions were voluntarily made. He passed on the question of their admissibility alone, and submitted to the jury the question of whether they were voluntarily made." The above rule appears to have been followed here. See also *Payne* v. *State,* 226 Ark. 910, 295 S. W. 2d 312.

*3.*

Appellant next contends that the court erred in denying him the privilege of proving the reputation of the arresting officer, Pink Booher, by specific acts. During direct examination of appellant [in chambers] by his attorney the record reflects the following: ''Q. What was the general reputation down there of Mr. Booher? A. Well, I heard them say he whipped up a few folks and shot them if necessary. Q. You were aware of that rumor on that? A. Yes sir, that's what frightened me. Q. That's what frightened you at that time? A. Yes sir. Q. Do you know whether or not he ever injured any Negro men or Negro people? The Court: That is going into some other crime. Mr. Howard: Your Honor, what I am trying to do is to show that he has a reputation that previously, (interrupted) The Court: You may ask about his reputation. Mr. Howard: To go a little bit further into the reputation of the deputy in that area among, (interrupted) The Court: Let me ask you —you are entitled to ask him if he knows his reputation and if he said yes, you are entitled to ask whether it is good or bad and not go into the specific instances—reputation is what other people say. Mr. Howard: That's all your Honor.''

We hold that the ruling of the court was correct in the circumstances, and in accord with our holdings to the effect that reputation cannot be proved by specific acts of violence to third persons. We said in *Day* v. *State,* 185 Ark. 710, 49 S. W. 2d 380: ''The court refused to admit testimony to the effect that the deceased sheriff had killed more than one man in making arrests, but the court admitted testimony concerning the general reputation of deceased as being a violent and impulsive·man. There was no error in this ruling. The reputation of the deceased for violence could not be properly proved by specific acts of violence to third persons. Underhill's Criminal Evidence (3d ed.), page 724. In the case of *Hardgraves* v. *State,* 88 Ark. 261, 114 S. W. 216, it was held (to quote the headnote in that case) that, 'In a prosecution for murder, it is not competent to show the violent and dangerous character of the deceased by evi-

dence of isolated facts or particular acts of violence. [Other cases cited]."

4.

Appellant filed "motion for mistrial" in which he alleged: "(1) That in the afternoon's edition of the Pine Bluff Commercial, dated Wednesday, March 13, 1957, an article appeared entitled 'Cady Testifies Eye Blinded by Gun Blast' stating among other things that the defendant had been recalled from the state penitentiary to stand trial on the charge of assault with intent to kill, and further stating that the defendant had entered a plea of guilty to the charge of assault with intent to kill several months ago and was sentenced to serve 21 years in the penitentiary. That on the same date at 6:30 p.m. and 10:00 p.m. the same information was released by local radio stations during their news cast. (2) The defendant states further that said article in said newspaper and the information released by local radio stations were prejudicial to the interest of the defendant, and the defendant hereby requests permission to examine the jurors individually as to their intelligence of said article in said newspaper and to the information released by local radio stations. Wherefore, defendant prays for a mistrial."

The record shows that appellant offered no proof of prejudice beyond the recitals in his motion. Where, as here, the trial court exercised its discretion and permitted the jurors to separate, the burden is upon the accused to show that they were improperly influenced by the exposure. It appears that after hearing appellant's motion in chambers, the court denied it, and after returning to the court room the record reflects the following: "The Court: Gentlemen of the jury, on yesterday afternoon before we recessed for the night the court admonished you not to read any newspaper articles—I do not believe I admonished you not to listen to radios, but on this morning counsel for defendant files a motion for a mistrial alleging that certain articles with certain historical background were published in the Pine Bluff Commercial and that said statements were made over the

radios at 6:30 and 10:00 p.m., and then he asked permission to examine the jurors individually as to their intelligence of said article in said newspaper and to the information released by local radio stations. That I am not going to permit, but I will ask you gentlemen, as this has been filed, if you, any of you, violated the orders of the court and read and studied these articles that you might have seen in the newspapers? Juror Long: Judge, I did not, and I can't believe that any other man on this jury would have. The Court: I hear none. All right. Did you listen to the radio? Juror Long: I did not—it wasn't turned on—or the television. The Court: None of you did? A Juror: I don't take the paper. I went to bed with a sore back—I don't know about the rest of them. A Juror: Judge, I believe you can swear us in on it if you want to. The Court: You are sworn in— when you were sworn on this trial you are sworn in. The Court doesn't think it proper to permit counsel to cross-examine you about this kind of matter during this trial. I believe each and every one of you, if I make no mistake say you did not hear the radio, is that correct? Jurors. That is correct by me. Yes sir, yes sir. The Court: Okay. Just a minute, I believe you all stated that you did not—if you will hold up your hands, all of you that answered the question I have asked. Mr. Reporter, will you please check the hands to see if they are all up? (Court Reporter's Note: The hand of each juror is raised.)'' We, therefore, hold that no prejudice was shown.

## 5.

Appellant finally contends that the court erred in refusing to give his requested Instruction No. 3, as follows: ''A confession, in order to be admissible or to be considered, must be made voluntarily; that is, without anybody holding out any hope of reward or leniency, or fear of punishment for not doing it. If that is done, it is competent for the jury to consider it and give it such weight as they see fit. You have a right to consider all the circumstances surrounding the party at the time the confession is made, and give to it such weight as you

think proper under all the circumstances.'' We think this instruction was fully covered by the court's Instruction No. 21 *supra*. It is well established that courts are not required to repeat or multiply instructions, or to say the same thing in effect twice. See *Fikes* v. *Johnson,* 220 Ark. 448, 248 S. W. 2d 362, 32 A. L. R. 2d 934.