BARNES AND YORK *v.* STATE.

4604                                          229 S. W. 2d 484

Opinion delivered May 1, 1950.

Rehearing denied May 29, 1950.

*Claude F. Cooper* and *Oscar Fendler*, for appellant.

*Ike Murry*, Attorney General, and *Robert Downie*, Assistant Attorney General, for appellee.

DUNAWAY, J.  Appellants, Barnes and York, were convicted of the crime of grand larceny and their punishment was assessed at five years' imprisonment in the State Penitentiary.  This is the second appeal in this case.  On the first appeal, *Barnes and York* v. *State,* 215 Ark. 781, 223 S. W. 2d 503, a similar judgment was reversed because of the introduction of prejudicial hearsay testimony, and the cause was remanded for a new trial.

These facts were established by the undisputed testimony:  On the night of November 4, 1948, the store building of Moore Brothers, located on the outskirts of Blytheville, Arkansas, was forcibly entered and a metal safe containing in excess of $1,000 in cash and a number of checks was stolen.  The safe was found in a Negro cemetery about one mile from town on Sunday, November 7.  A large hole had been made in one side of the safe and the money taken.  During the course of an investigation by the Blytheville police, an abandoned automobile was found on the highway running from Blytheville to Hayti, Missouri.  In that car was a sales slip for merchandise purchased at the Moore Brothers' Store, which

slip of paper had been in the safe the night of the crime. The investigation also disclosed that the night of the offense, several Negroes had hired a taxicab to take them to Hayti, Missouri.

As a result of information furnished to law enforcement officers in Hayti, appellants and another Negro, Wilton Austin, were apprehended as suspects. On November 19, in response to a call from the Hayti officers, the Sheriff of Mississippi County, one of his deputies and the Chief of Police of Blytheville went to Hayti where they talked to appellants and Austin. The suspects denied ever having been in Arkansas.

The Sheriff and others testified that appellants agreed to accompany them to Blytheville, with the understanding that if it developed that they were not the persons wanted for the commission of the offense under investigation, they would be returned to Hayti. Appellants' testimony was to the effect that they did not know they were being taken to Arkansas, but only agreed to go to another town and if not there "identified" as the criminals sought, they would be returned. They were taken by the officers to Blytheville, where they were placed in the county jail.

Upon their arrival there, appellants were questioned briefly and again denied ever having been in Arkansas before. Appellant York and Austin were then locked in the jail, while appellant Barnes was taken in an automobile by the Sheriff and his deputy, who drove past Moore Brothers' Store and the cemetery where the stolen safe had been found. Barnes denied having seen either place before. The officers testified that Barnes was shown a "field," and was not told by them that it was a cemetery; and that because of the darkness and high grass growing there it was impossible to see any tombstones to identify the place as a cemetery.

They then returned to the jail, where according to the officers, Barnes was questioned only a few minutes. The trip and questioning took approximately fifteen minutes, the officers testified. Barnes' testimony was that he was taken to a cemetery, after which he was inter-

rogated for about three hours. Barnes was then locked in the jail for the night, still denying any knowledge of the affair.

The following morning about nine o'clock, the jailer informed the Sheriff, upon his arrival at the jail, that Barnes wanted to talk to him. Barnes was brought downstairs and asked that York be brought down too. Both appellants then made detailed statements in which they admitted their participation in the crime, and said they had each received $300 for acting as watchmen during the burglary and for assisting in removing the safe in an automobile, in company with two other men.

These oral confessions by appellants were not mentioned by the State, and no attempt was made to introduce them in evidence. It appears that before the trial commenced, on motion of the defense, the State was instructed by the trial court not to mention these oral confessions; the ground being that a wire recording of the original oral confessions was so garbled as to be incomplete. Although this evidence was not presented to the jury, it further appeared from the pre-trial proceedings, that the garbled wire recording had been "erased" by the Sheriff after the first trial since it had been ruled inadmissible at that time because of its incompleteness.

On December 6, 1948, similar statements were made by appellants in the presence of the Sheriff, Prosecuting Attorney, Austin and Miss Eunice Brogdon, a deputy sheriff and collector. Appellants told in detail how the crime was committed and that the safe was left in the cemetery where the officers had found it. These statements were reduced to writing by Miss Brogdon. The testimony on the part of the State, by the Sheriff, Austin and Miss Brogdon was that Miss Brogdon took down in shorthand the statements as dictated by the Prosecuting Attorney; that the Prosecuting Attorney dictated the substance of what appellants were then relating as to the occurrence of the crime. The State's witnesses said that prior to the writing down of these statements, the appellants were advised that they were not required to make any statement, and that any statements made could

be used against them. Recital of these facts was made in the statements.

When the confessions were typed by Miss Brogdon, the Circuit Clerk, County Treasurer, and a local real estate dealer were called into the room to witness appellants' signatures. These witnesses all testified that the statements were read to appellants in their presence, that appellants at that time said the statements were true, and affixed their signatures thereto. These three men then signed the statements as witnesses. Miss Brogdon signed the statements as Notary Public, having first sworn the appellants.

The written confessions of both appellants were submitted to the jury under appropriate instructions that they must have been freely and voluntarily made before any consideration could be given them. This was done over appellants' objections, and after a preliminary hearing on the question of the voluntary nature of the confessions in chambers out of hearing of the jury.

The defendants testified that the statements introduced were not true and insisted that the confessions had been made as a result of promises of suspended sentences by the Sheriff and fear of physical mistreatment. They did not testify that there had actually been any mistreatment at any time by anyone while they were in custody. They did not say there were any threats or promises at the time the written confessions were made. Their testimony was that the Sheriff had promised leniency before the initial oral confessions were made, and that they were afraid because at that time a deputy sheriff was present with a black-jack asking the Sheriff to let him see if he could make them talk. The officers flatly denied that any threats or promises had ever been made to induce appellants to make a confession. There was no testimony of constant interrogation over an extended period of time. The defendants did not say they had been questioned in the interim between the making of the oral confessions and the ones later reduced to writing.

It is appellants' contention that the initial oral confessions were illegally obtained as a matter of law, and that the subsequent written confessions were the result of a continuing illegal inducement—fear and promised leniency—and consequently inadmissible.

The proper procedure to be followed when the voluntary nature of an alleged confession is questioned was well stated in the opinion written by Mr. Justice FRANK G. SMITH in *Burton* v. *State*, 204 Ark. 548, 163 S. W. 2d 160, where we said: "We have frequently defined the practice where it is contended that a confession offered in evidence was not freely made. This practice is for the court to hear, as a preliminary matter, in the absence of the jury, testimony as to the circumstances under which the confession was made, and to exclude it from the jury if it were not freely made. If, however, there is an issue of fact as to whether the confession were freely made, that question should be submitted to the jury after having heard the testimony as to the circumstances under which it was made, and the jury should be told to disregard the confession if it were found not to have been voluntarily made."

That is exactly the procedure which was followed in the case at bar. Appellants insist, however, that in this case there are certain undisputed facts which render the admission of the confessions violative of their rights under the 14th Amendment to the United States Constitution, and that the confessions should have been excluded as a matter of law. Two of these are: (1) Appellants were taken in custody without a warrant of arrest. (2) They were not taken forthwith before a committing magistrate as required by Ark. Stats. (1947) § 43-601. Our decision in *State* v. *Browning,* 206 Ark. 791, 178 S. W. 2d 77, settled these questions adversely to appellants' contention. We reaffirmed the holding in the *Browning* case, that even though these facts be true a confession is admissible if voluntarily made, in *Palmer* v. *State,* 213 Ark. 956, 214 S. W. 2d 372. In the *Palmer* case we reviewed the decisions of the U. S. Supreme Court (*Ashcraft* v. *Tennessee,* 322 U. S. 143, 64 S. Ct. 921, 88 L. Ed. 1192; *Malinski* v. *New York,* 324 U. S. 401, 65 S. Ct.

781, 89 L. Ed. 1029; *Haley* v. *Ohio*, 332 U. S. 596, 68 S. Ct. 302, 92 L. Ed. 224) which it was argued necessitated a change in our earlier decisions.

Appellants now urge that later U. S. Supreme Court decisions require us to say that the confessions introduced in this case were obtained under circumstances which rendered their admission a violation of due process of law. See *Watts* v. *Indiana*, 338 U. S. 49, 69 S. Ct. 1347; *Turner* v. *Pennsylvania*, 338 U. S. 62, 69 S. Ct. 1352; *Harris* v. *South Carolina*, 338 U. S. 68, 69 S. Ct. 1354. All of these cases are easily distinguishable from the case at bar. In each instance the undisputed proof was that the accused had been over a period of several days interrogated by relays of officers for hours at a time, day and night, and had not been advised as to his constitutional rights.

In *Watts* v. *Indiana, supra,* the Supreme Court said: "On review here of State convictions, all those matters which are usually termed issues of fact are for conclusive determination by the State courts and are not open for reconsideration by this Court. Observance of this restriction in our review of State courts calls for the utmost scruple. But 'issue of fact' is a coat of many colors. It does not cover a conclusion drawn from uncontroverted happenings, when that conclusion incorporates standards of conduct or criteria for judgment which in themselves are decisive of constitutional rights. Such standards and criteria, measured against the requirements drawn from constitutional provisions, and their proper applications, are issues for this Court's adjudication. . . .

"In the application of so embracing a constitutional concept as 'due process,' it would be idle to expect at all times unanimity of views. Nevertheless, in all the cases that have come here during the last decade from the courts of the various states in which it was claimed that the admission of coerced confessions vitiated convictions for murder, there has been complete agreement that any conflict in testimony as to what actually led to a contested confession is not this Court's concern. Such con-

flict comes here authoritatively resolved by the State's adjudication. Therefore only those elements of the events and circumstances in which a confession was involved that are unquestioned in the State's version of what happened are relevant to the constitutional issue here. But if force has been applied, this Court does not leave to local determination whether or not the confession was voluntary. There is torture of mind as well as body; the will is as much affected by fear as by force.''

There is no conflict between that decision and the decisions of this court. If the undisputed testimony showed that the confessions had been extorted by threats of harm, promises of favor or benefit, inflictions of pain, a show of violence, or interrogation of the accused ''by a continuous inquisition persisted in to the extent of exhausting him physically and mentally and overcoming his will,'' such confessions would be inadmissible. See *Needham* v. *State*, 215 Ark. 935, 224 S. W. 2d 785, and cases therein cited. Here, however, all the witnesses for the State testified that no such elements were present. Appellants testified that they were. An issue of fact was thus presented, which was submitted to the jury under proper instructions.

Just as a conflict in the testimony regarding the circumstances under which a confession is made, is ''authoritatively resolved by the State's adjudication'' upon review by the U. S. Supreme Court, so on our review of the issue is the presence or absence of facts claimed to render the making of a confession involuntary concluded by the jury's determination when that question is submitted upon substantial conflicting testimony. The confessions were properly admitted in evidence.

Appellants also argue that the evidence is insufficient to warrant their conviction even if the confessions were admissible. The commission by someone of the crime of grand larceny was definitely proved by the testimony of the owner of the store and the officers who found the chopped-open safe. In addition, Wilton Austin, who was with appellants when they were taken in custody, testified that shortly prior to that time while on a trip

to Kentucky with them, appellants told him they had "pulled a job" in Arkansas. The law is that the extra-judicial confession of a defendant accompanied by proof that the offense was actually committed by someone will warrant a conviction. *Melton* v. *State,* 43 Ark. 367; *Burrow* v. *State,* 109 Ark. 365, 159 S. W. 1123; *Ezell* v. *State, ante,* p. 94, 229 S. W. 2d 32. The evidence was sufficient to sustain the verdict of guilty.

We do not discuss all the points raised by appellants' thirty-seven assignments of error in their motion for new trial. Our conclusion from a study of the record is that no error was committed in the trial of this case. Contrary to appellants' argument, the lengthy record in this case shows that the trial was conducted in an eminently fair and impartial manner by the learned trial judge.

The judgment is affirmed.