BINNS v. STATE.

4999                                    344 S. W. 2d 841

Opinion delivered March 13, 1961.

[Rehearing denied April 24, 1961.]

W. W. Shepherd, for appellant.

J. Frank Holt, Attorney General, by Russell J. Wools, Asst. Attorney General, for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a conviction for having willfully damaged a building with dynamite in violation of Section 41-4237, Ark. Stats. (1947).

The appellant asserted seven alleged errors in his motion for a new trial. In his brief in this Court he argues only one of these matters which is the alleged

error of the Court in refusing to set aside the jury panel and to appoint new jury commissioners to select a new jury. Appellant, a Negro, contends that the panel should have been set aside and new commissioners appointed because Negroes have been systematically excluded from the office of jury commissioner for a period of many years and no member of the jury commission which selected the panel which tried appellant was a Negro. This same contention has been previously rejected in *Payne* v. *State,* 226 Ark. 910, 295 S. W. 2d 312; and we refuse to depart from the holding of that case.

Despite the fact that appellant has not argued the other matters contained in his motion for a new trial, we are duty bound to examine and consider all the grounds alleged therein. *Washington* v. *State,* 183 Ark. 667, 37 S. W. 2d 882.

We find that there is no merit in five of the six grounds which appellant has failed to argue. The remaining ground is that the court erred in permitting the State to introduce in evidence the purported confessions of appellant. After much study and research, we are convinced that these confessions were improperly admitted in evidence because such confessions were involuntary.

In a situation such as this, we must determine the issue upon the testimony which is undisputed or upon the testimony of the State's witnesses because on controverted issues of fact the verdict of the jury precludes us from further investigation. *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15.

The undisputed evidence shows that the defendant was questioned almost continuously for a period of 52 hours before giving the first confession. It is also undisputed that the officers continued to interrogate defendant for an additional 5 hours during which time he made two more confessions. The defendant was arrested at 5:00 p.m. on February 16th and interrogated from that time until 9:30 p.m. on February 18th, at which time he made a written confession. As soon as he (defendant) made

this confession, the Prosecuting Attorney was called in and he interrogated the defendant for an additional 5 hours and procured two additional confessions.

The question for our determination is, was the interrogation persisted in long enough to exhaust him physically and mentally and overcome his will? If so, then all of the confessions were inadmissible. *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15; *Barnes and York* v. *State,* 217 Ark. 244, 229 S. W. 2d 484. In *Barnes and York, supra,* we said:

"If the undisputed testimony showed that the confessions had been extorted . . . 'by a continuous inquisition persisted in to the extent of exhausting him physically and mentally and overcoming his will,' such confessions would be inadmissible."

In *Brown* v. *State, supra,* where the defendant had been subjected to prolonged questioning on two nights, we held that it was error to admit the confession which was finally given on the second night. In this connection we quoted with approval from *Spurgeon* v. *State,* 160 Ark. 112, 254 S. W. 376, as follows:

"Of course, the officers had a right to interrogate the accused concerning his participation in the offense, but they had no right to coerce him into a confession by a continuous inquisition persisted in to the extent of exhausting him physically and mentally and overcoming his will."

In the *Brown* case, as in the case at bar, it was contended that there was a jury question on the matter of duress in obtaining the confession because the officers testified that the confession was freely made. The Court said in answer to this contention:

"In this case the officers testified that the confession was, in fact, freely made; but such testimony, in view of the undisputed facts herein recited proves only that they misapprehended what it takes to constitute duress. Under the circumstances here detailed it was, in our opinion, error to have admitted that confession as it

does not appear to have been freely and voluntarily made.''

What we said in the *Brown* case is peculiarly appropriate here for the record shows that the facts previously mentioned are undisputed and the testimony of the officers amounted to no more than conclusions because they simply testified that no force or duress was exercised, while admitting the continuous interrogation of the suspect.

The appellant testified that he had no sleep during the entire 57 hour period. This testimony might ordinarily be considered as disputed but when the officers admitted the continuous interrogation, they impliedly admitted that defendant had no sleep. No other conclusion can be drawn from these admissions.

What is the effect of prolonged questioning and lack of sleep? It has been well stated as follows:

''The most commonly used method is persistent questioning continuing hour after hour, sometimes by relays of officers. It has been known since 1500 at least that deprivation of sleep is the most effective torture and certain to produce any confession desired.'' [Report of Committee on Lawless Enforcement of Law made to the Section of Criminal Law and Criminology of the American Bar Association (1930); 1 American Journal of Police Science 575, 579, 580; IV Reports of National Committee on Law Observance and Enforcement (Wickersham Commission). U. S. Government Printing Office, 1931, Lawlessness in Law Enforcement, p. 47.]

In *Ashcraft* v. *Tennessee,* 322 U. S. 143, 64 Sup. Ct. 921, 88 L. Ed. 1192, the Supreme Court of the United States held that a confession obtained at the end of 36 hours of continuous questioning was inadmissible because in violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States, saying:

''We think a situation such as that here shown by uncontradicted evidence is so inherently coercive that its

very existence is irreconcilable with the possession of mental freedom by a lone suspect against whom its full coercive force is brought to bear.''

For the error indicated, the case is reversed and remanded for a new trial, at which time the voluntariness of the confession may be considered with all other matters.

HARRIS, C. J., dissents.

McFADDIN, J., concurs.

ED. F. McFADDIN, Associate Justice, concurring. I concur in the result reached by the Majority, but there are certain implications contained in the Majority opinion from which I desire to disassociate myself. It is true that some of the appellant's testimony, if given unlimited meaning, might be taken to say that he was questioned continuously for long hours; and it is because such testimony is unexplained that I vote for a reversal. However, I think it is only fair to make certain observations for the benefit of the Bench and Bar.

We have a rule of long standing that in a felony case this Court considers every assignment contained in the Motion for New Trial, even though the assignment is not argued on appeal. In *Martin* v. *State,* 206 Ark. 151, 174 S. W. 2d 242, we stated and applied this rule and cited the cases of long standing; and it is because of this rule that the appellant is winning a reversal in the case at bar. The Motion for New Trial in the present case had seven assignments, and one of these related to the defendant's motion to exclude the confession from the consideration of the jury. We have to consider this assignment even though it was not argued on appeal.

The appellant was represented in the Trial Court and on appeal by an experienced attorney. If that attorney had thought that his client had been questioned continuously for a long period of time, I am confident that the point would have been vigorously urged on appeal. So the loose statement contained in the appellant's testimony about the time for which he was questioned went

unnoticed by his counsel, as well as by the State, and, therefore, remained unexplained. On this the appellant is winning a windfall reversal. On a retrial, the continuity of the questioning will be a matter that the Court and jury may consider in view of the reversal now made.

No one will sanction continuous questioning for a long period of time, but the Majority Opinion might be considered as criticizing the Trial Court and the officers on a point which the appellant's experienced attorney did not even argue; and so, while I agree with the result in the case, I think some explanation is due in fairness to the Trial Court, the officers, the appellant's attorney, and all others.

CARLETON HARRIS, Chief Justice, dissenting. I dissent to the reversal because I do not interpret the testimony in the same manner as the Majority. The Majority state:

"The undisputed evidence shows that the defendant was questioned almost continuously for a period of 52 hours before giving the first confession."

Further:

"* * * the record shows that the facts previously mentioned are undisputed and the testimony of the officers amounted to no more than conclusions because they simply testified that no force or duress was exercised, while admitting the continuous interrogation of the suspect."

I find nothing in the record, other than the testimony of the appellant, which shows continuous questioning. It is true that in certain instances, replies to questions asked on cross-examination, might possibly leave an impression that appellant was continuously interrogated. For instance, during the cross-examination of Detective Sergeant Bentley:

"Q. Didn't you apply some rather hypnotic spell over this ignorant Negro boy to get him to do that?

A.   No, sir.

\* \* \* \* \*

Q.   You just think he said that, and wrote all that out freely.

A.   Yes, sir.

\* \* \* \* \*

Q.   After three days and three nights of quizzing?

A.   From the evening of the 16th, sir.'' (The confession was taken on the evening of the 18th.)

Further, during re-cross examination of the same witness:

''Q.   Well, you didn't let him out anywhere?

A.   No, sir.

Q.   You didn't let him talk to counsel?[1]

A.   No, sir.

Q.   Or anybody? You kept him there in your custody?

A.   He was either there or in the city jail all the time.''

This testimony to me simply means that Binns was questioned off and on for a period of three days, but it does not convey to me the idea that Binns was being *continuously* interrogated.   In other words, he was not being questioned in ''relays.''   I take the testimony to mean that Binns would be questioned for awhile, and then taken back to his cell; on other occasions, he would be again brought out and questioned, and again returned to the cell, all over a period of three days.   The Majority say:

''The appellant testified that he had no sleep during the entire 57 hour period.   This testimony might ordinarily be considered as disputed but when the officers admitted the continuous inquisition, they impliedly admitted that defendant had no sleep.''

---

[1] Bentley stated that Binns did not ask for counsel.

As stated, there is no testimony by the officers that I would interpret as an admission, implied or otherwise, that the defendant had no sleep. The testimony definitely establishes that Bentley was present on each occasion when appellant was questioned, and if Binns was exhausted from lack of sleep—it would appear that Bentley should have been likewise exhausted. Detective Bentley is indeed a zealous officer if he will go without sleep for 57 hours in order to interrogate a prisoner!

Counsel for appellant subjected the officers to a vigorous cross-examination, and if it is so obvious that appellant had been consistently questioned without let-up for 52 hours, I am at loss to understand why appellant's counsel *did not argue this matter in his brief*. It is only mentioned as a point—but not argued. I think that even officers in small rural communities know that a confession, obtained in the manner set out in the Majority opinion, would be entirely inadmissible; I am of the opinion that members of the Little Rock Police Department, who have been with the department for eight years (as was Bentley) would likewise know this fact. Not only that, but the proof shows that Agent Tom Webb of the FBI was present most of the time during the periods of interrogation. Certainly, these agents are well trained in matters of law before assuming their duties.

Despite defense counsel's reference about the ''ignorant Negro'' on cross-examination, the record reflects that such is not the case. Binns cannot be placed in that category. He attended two years at Philander Smith, and his testimony leaves no doubt but that he is moderately well educated.

Of course, Binns testified that he was deprived of sleep, though his complaint seems to deal mostly with failure to obtain cigarettes, ''couldn't eat the food'', couldn't take a bath, and the fact that he was not permitted to call an attorney. From his testimony:

''Yes, sir, now, on the night of the 18th, I said, 'Mr. Bentley, I am tired and I am weary. Would you please release me? You have nothing against me. I have told

you for three days I don't know who did it. I had nothing to do with it,' and he said, 'Well, you are going to give me a statement before you leave here. You are not going to leave before you do.' I said, 'Please give me a cigarette, I am nervous.' He said, 'Well, here,' and he had a filter and I don't like filter cigarettes and I broke it off. I said, 'Well, is there any way I can buy a package of cigarettes?' He said, 'No, you are not going to get any cigarettes.' I said, *'I haven't been able to sleep naturally you accusing me of this.*[2] I haven't had any cigarettes. You won't let me buy any.' ''

The emphasized statement indicates to me that Binns' loss of sleep was due to worry over the charge, rather than continuous interrogation.

In addition to stating that he was forced to make the statement, appellant testified that he confessed because the officers were threatening to file charges against him because of obscene literature found in his automobile, and further threatening to file charges against his girl friend.

''They threatened to bring my girl friend in and lay some charges against her. I said, 'To protect her, and she is innocent and Monts, then I will give you a statement if you will just let me call an attorney, let me have some cigarettes and release me so I can go home and bathe,' and he said, 'O.K.' That is when I began to giving him statements slowly.''

Of course, it is not unusual for one who has made a confession to later claim that it was obtained through coercion or duress.

Since I do not agree with the majority opinion in stating that the facts upon which the reversal is based are undisputed, I am of the opinion that the question of whether the confessions were made voluntarily was a matter for the jury to determine. We have so held. In *McClellan* v. *State,* 203 Ark. 386, 156 S. W. 2d 800, this Court said:

---

[2] Emphasis supplied.

"In such cases the practice approved by us, which was followed in the instant case, is for the Court to hear the testimony in the absence of the jury as to the circumstances under which the confession was given, and if there is a substantial question as to whether it was freely and voluntarily made, to submit that question of fact to the jury, after admonishing the jury to disregard the confession unless it was found to have been voluntarily made."

The Circuit Judge in this case gave a rather lengthy instruction to the jury relative to a confession, as follows:

"There is evidence here that the defendant made a confession. Before you can consider any confession as evidence, you must find: (1) That he did make a confession. (2) That the confession he did make was the one you heard on the witness stand. (3) That when he made it he told the truth. (4) That it was voluntarily made.

"In order for a confession to be voluntary you must find that it was made without hope of reward or fear of punishment. The basis of the statement that a confession must be voluntary is that the Constitution of the State says no person shall ever be compelled to give evidence against himself.

"The presumption of the law is that any confession made by a defendant, when he is in custody of officers, whether these officers be the Sheriff, Detectives, Policemen, the Prosecuting Attorney, or any other officer, is voluntary and incompetent and cannot be considered by you.

"The effect of that presumption is to place the burden of proof on the State to prove by a preponderance of the testimony that the confession was voluntary. They must overcome this presumption of law to your satisfaction and show that the confession was voluntary. If you find that the defendant, during the time of his custody was under the influence of officers at any time such as would

make any statement or confession involuntary, the law presumes that this influence continues and makes all other statements or confessions made by him thereafter incompetent until the State shows by a preponderance of the testimony that this influence has been removed.

"Before any statements or admissions made by the defendant can be used against him as evidence, such statements or admissions must have been free and voluntary and which such statements or admissions, if any, are induced by threats of harm, promise of favor, a show of violence, a putting of fear or inquisitory methods are used to extort a confession, then the same is attributed to such influence and cannot be used against the defendant."

This was a proper instruction, and under our holdings, I am of the opinion that it was within the province of the jury to say whether or not the confession was voluntary.

I respectfully dissent.