WILLIAMS *v.* STATE.

4905 322 S. W. 2d 86

Opinion delivered January 26, 1959.

[Rehearing denied April 6, 1959]

*Kaneaster Hodges, Sam Levine, C. M. Erwin,* for appellant.

*Bruce Bennett,* Atty. General, by *Thorp Thomas,* Asst. Atty. General, for appellee.

SAM ROBINSON, Associate Justice. Appellant, H. O. Williams, a school teacher, was convicted of the crime of involuntary manslaughter and sentenced to two years in the penitentiary and fined $1,000. On appeal appellant contends, among other things, that the evidence is not sufficient to support the verdict.

On the 25th day of February, 1957, Williams attempted to drive an old truck in a bad state of repair, to a shop at Weldon, in Jackson County, Arkansas, to have it repaired. He could not get the vehicle started, and it was therefore necessary to get assistance by having the truck pushed. Before he reached the hard surfaced road he got stuck in a mud hole. He left the truck there overnight; went back the next day and got Mr. Carr, who lived nearby, to pull him out of the mud hole with a tractor. Finally Williams arrived at the hard surfaced road with the truck and started north toward Weldon, about two miles distant. After traveling about one-half mile the truck began to sputter and stopped. The hard surfaced part of the road is 23 feet wide, and the truck came to a stop in the middle of the east travel lane. This was about 7:00 p. m. It was dark and drizzling rain. Williams had no flares. There was no tail light on the truck, and although one headlight had been burning when the truck was running, no light on the truck would burn after it stopped. Accepting Williams' testimony as true, he attempted to push the truck off the paved portion of the highway but was unable to do so. He attempted, also, to get other travelers on the highway to stop and help him, but none would stop. He then started walking toward Weldon with the intention of getting a garageman to come and move the truck. He had gone only a short distance when Mr. Burton,

with whom he was acquainted, stopped and picked him up. At that time Burton cautioned Williams that the truck had been left in a dangerous place. Williams rode to Weldon with Mr. Burton and proceeded to the garage to get Euil Malden to go move the truck. Malden was eating his supper at the time, and he told Williams that he would have to finish his supper and finish the work he had been doing on a tractor before he could go after the truck. Williams was under the impression that this would not be too long. He sat down and waited for Malden until work was finished on the tractor. This work was not completed until about nine o'clock.

In the meantime Mr. Jimmy Ray Simmons was driving his car north on the same road where the truck had been left; he was going in the same direction the Williams truck was headed when it stopped. In the car with Mr. Simmons were his wife and son, and Mr. Jim Benning and his wife and son, and Mrs. Benning's daughter, Linda, nine years of age. As Mr. Simmons approached the Williams truck, but before he got to a point where he could see it, he was met by a truck driven by Clyde Henderson, traveling south. The lights from the Henderson truck blinded Simmons to the extent that he did not see the Williams truck until just a few feet from it. In an attempt to miss the Williams truck, he swerved to his left in such a manner that he struck the end of the rear bumper of the Henderson truck, which was passing at that moment, but he was unable to avoid striking the left rear of the Williams truck, which had a grain bed on it. As a result of the collision, Mrs. Benning and her daughter, Linda, received injuries from which they died two days later. The prosecuting attorney filed a felony information against Williams, charging him with manslaughter.

The point that has caused us considerable concern is whether the evidence is sufficient to sustain the conviction. After careful deliberation we have reached the conclusion that the evidence is sufficient. The facts are pretty well outlined above. On a dark and misty night the appellant left a heavy, two-ton, unlighted truck,

equipped with a wide grain bed, in the middle of one of the travel lanes of a good hard surfaced road. He set out no flares, and had left the truck unguarded for about an hour and a half, when the tragedy occurred. Although, even if it is considered that it was necessary that he leave the truck on the highway unguarded in the first instance, it was a question for the jury as to whether Williams should have returned to the truck as soon as possible to help guard against the very thing that did happen. When he found out that Mr. Malden could not go after the truck immediately, he could have started walking and reached the truck a long time before the collision occurred. And if he had been with the truck when the cars approached at the same time from opposite directions, it is not beyond the range of possibility that he could have given signals that would have saved two lives. He knew the truck was in a dangerous place; he knew the night was dark and that weather conditions caused poor visibility; and yet, for one and one-half hours, he did nothing to remedy the extremely dangerous situation he had brought about. Ark. Stat. § 41-2209 provides: "Involuntary manslaughter defined.— If the killing be in the commission of an unlawful act, without malice, and without the means calculated to produce death, or in the prosecution of a lawful act, done without due caution and circumspection, it shall be manslaughter. Provided further that when the death of any person ensues within one (1) year as a proximate result of injury received by the driving of any vehicle in reckless, willful or wanton disregard of the safety of others, the person so operating such vehicle shall be deemed guilty of involuntary manslaughter." The defendant was charged in the words of the statute.

Appellant contends that the second part of § 41-2209 covers the offense of involuntary manslaughter resulting from the driving of an automobile exclusively; that the first part has no application when the death grows out of driving an automobile; and that the court erred in instructing the jury on doing a lawful act without due caution and circumspection. It is not necessary, however, to discuss this point, because an exception

was not saved to the instruction as given. As far back as the year 1915, in the case of *Madding* v. *State,* 118 Ark. 506, 177 S. W. 410, the court held that the first part of the statute, which was the only part in effect at that time, applied to the driving of an automobile "with reckless abandon and wanton disregard of the rights of others upon the streets and without a care as to their safety."

Appellant requested instructions dealing with efficient and immediate cause of the accident, and proximate cause. We think these instructions were covered by other instructions given by the court.

The defendant requested, also, instructions on "misfortune or accident." There is no evidence in the record to justify any instruction along that line.

Appellant also complains of the court's refusal to excuse for cause the venireman Breckenridge. On examination by counsel for the defendant Mr. Breckenridge stated that he had an opinion about the case that would take evidence to remove. But on further examination, he stated that he could and would go into the jury box with his mind completely open and try the case solely on the law and the evidence.

The appellant is a Negro. On December 9th, two days before the trial began, he filed a motion to quash the jury panel on the ground that there has been systematic exclusion of Negroes from jury panels in Jackson County and that there was no Negro on the present jury panel. Two days later when the case was called to trial, no action had been taken on the motion. Counsel for defendant orally renewed the motion; it was overruled and exceptions were saved. The court stated: "Since January 1, 1952, the matter of selecting jury commissioners and instructing such commissioners has been the responsibility of this court. In every case, when jury commissioners were called upon to serve by the court, they have been instructed specifically and in considerable detail to the effect that there should be no discrimination on their part in the selection of members of jury panels because of

race, color, creed or sex. Of course, no suggestion has ever been made as to whom should be placed on jury panels, but particular care has been used by the court to instruct these commissioners that they should place on such lists the names of people who were qualified electors and who, in their judgment, were people of good character and possessing such qualifications that in their considered opinions would make good jurors. Embodied in these instructions has been an explanation of the fact that a part of their duty was to carefully consider all of the population of Jackson County and if, in their opinions, there were members of the Negro race who possessed the necessary good character and judgment to qualify them for jury service that it would certainly be proper for them to include them on these lists. During these years it has been the court's personal observation, and the court takes judicial notice of the fact that frequently names of members of the Negro race have appeared on the jury panel lists, and not only that, but they have qualified and have served as petit jurors during this period of time.'' Counsel for the defendant then stated: ''We are tendering the proof that there is no Negro on this panel, or these panels; there was one Negro, Willie Booker, on the February, 1957, panel; there were two Negroes, O. A. Porter and John Laird, on the September, 1956, panel; and there were two Negroes, Mack Newton and one other person, on the February, 1956, panel.''

Purposeful and systematic exclusion of the members of any race from jury service is contrary to law, but, as we said in *Dorsey* v. *State,* 219 Ark. 101, 240 S. W. 2d 30, ''The burden of showing facts which permit an inference of purposeful limitation is on the defendant. *Martin* v. *Texas,* 200 U. S. 316, 26 S. Ct. 338, 50 L. Ed. 497.'' In the case at bar the proffered testimony falls far short of showing that there was purposeful or systematic exclusion of Negroes from jury service.

The State introduced as evidence pictures of the scene of the collision. In one of these pictures there is a State policeman's automobile. We do not see how the automobile in the picture could in any way be prejudicial

to the defendant. The width of the road and the width of the shoulders of the road were shown by other uncontroverted evidence. We do not think there was an abuse of discretion by the trial court in admitting the picture in evidence. *Southern National Ins. Co.* v. *Williams,* 224 Ark. 938, 277 S. W. 2d 487.

Dr. T. E. Williams, who treated Mrs. Benning and her daughter for the fatal injuries they received in the collision, over objections and exceptions of defendant, was allowed to state the nature of the injuries which resulted in their deaths. The prosecution made no effort to emphasize or dwell on the nature of the injuries for the purpose of arousing emotions of the jury. The doctor's testimony as abstracted by appellant is as follows: "Mabel Benning was very severely injured and was in deep shock; she had a compound fracture of the right elbow and of the right ankle; she had a cerebral contusion, cerebral concussions, multiple bruises and lacerations scattered around her body; Linda Schol was in extreme shock, she had cerebral contusions, a comminuted fracture of the forearm, multiple abrasions, lacerations and bruises around her body; Mabel Benning was given the usual shock treatment of glucose and an attempt was made to reduce the fracture as much as possible to help relieve the shock; she was given narcotics for pain and an attempt was made to get her out of shock (Tr. p. 114); she died February 28th at 5:20 P. M. from brain damage; Linda Schol died February 28th at 10:45 P. M. from shock plus brain damage."

Of course, it was incumbent upon the State to prove the *corpus delicti.* Failure to prove the cause of death could be fatal to the State's case. *Cole* v. *State,* 59 Ark. 50, 26 S. W. 377. And, although the State may have had the right to rely on the defendant's admission in open court that the deaths were the result of the collision, the State was not required to rely on such admission to establish the *corpus delicti.*

Other points are argued, all of which we have examined carefully, but we find nothing calling for a reversal.

Affirmed.

HARRIS, C. J., dissents.

JOHNSON, J., not participating.

CARLETON HARRIS, Chief Justice, dissenting. I am of the opinion, that because of two errors (in my view) committed during the trial, this case should be reversed and remanded.

Dr. T. E. Williams was called as a witness for the State, and testified relative to the numerous injuries received by Mrs. Benning and Linda Schol. According to his evidence, the injuries to both were very severe, and those received by Mrs. Benning covered most of the body. He mentioned that the bone was protruding through the skin of her elbow, and also her right ankle. Appellant's counsel had previously in Chambers, made the following admission and objection:

"We concede that Mrs. Benning and the child, Linda Schol, died as a result of the collision within the statutory period. I believe a year is the statutory period, so we admit that fact. We feel that they should not pursue at any length in regard to the gravity of the injuries. We feel, Your Honor, that the State, since we have admitted the death of Mrs. Benning and the death of Linda Schol as a result of this collision, should not be permitted to introduce evidence by Dr. Williams, or anyone else, bearing solely upon the aggravated nature of the injuries, which could only serve to inflame the passions, and not to enlighten the jury as to any fact."

Also, at the conclusion of Dr. Williams' testimony, counsel again renewed the objection, and requested the court to exclude this evidence and to instruct the jury to disregard all of the doctor's testimony except that which showed the deaths of the persons involved. The court again overruled the objection and appellant's exceptions were noted. The injuries were of an extensive nature, and it is my feeling that this testimony could have influenced the jury in its verdict. The evidence was certainly unnecessary as the prosecution was based solely

upon the death of Mrs. Benning and Linda Schol, which fact counsel admitted.

I also feel that the admission of State's Exhibit No. 7, a posed photograph, showing a State Police car parked on the side of the highway, was prejudicial error. The evidence pretty well reflected that the footage between the pavement and a ditch on the right-hand side (facing north), was insufficient to be properly termed a shoulder. The photograph, however, shows the car as resting between the edge of the pavement and this ditch. The State admitted that the two-ton truck owned by appellant, involved in the collision, was wider than the automobile, but stated that the picture was only offered as an aid to the jury in visualizing the width of the side of the highway. I cannot see that it was admissible for any purpose. Evidence had already been offered as to the width between the edge of the pavement and the ditch (7 feet, 1 inch) and it is quite obvious to me that the truck, carrying a large wide bed, could not possibly have parked completely off the highway. Yet, this picture, when viewed by the jury, could have well served as a suggestion that if the trooper could park his car in that space, appellant could have done likewise.

For these reasons, I respectfully dissent to the holding of the majority.