Luther **BAILEY**, Appellant,

v.

Lee **HENSLEE**, Superintendent of the Arkansas State Penitentiary, Appellee.

No. 16547.

United States Court of Appeals Eighth Circuit.

March 17, 1961.

Rehearing Denied May 4, 1961.

Thad D. Williams, Little Rock, Ark., for appellant.

Thorp Thomas, Asst. Atty. Gen. of Arkansas, Bruce Bennett, Atty. Gen. of Arkansas, on the brief, for appellee.

Before VOGEL and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

BLACKMUN, Circuit Judge.

On January 18, 1960, the Supreme Court of the United States, in Bailey v. Henslee, 361 U.S. 945, 80 S.Ct. 408, 4 L.Ed.2d 364, entered the following order:

"Petition for writ of certiorari to the United States Court of Appeals for the Eighth Circuit denied without prejudice to a further application for writ of habeas corpus in the appropriate United States District Court, on the question whether members of petitioner's race were deliberately and intentionally limited and excluded in the selection of petit jury panels, in violation of the Federal Constitution."

Pursuant to this suggestion Luther Bailey, who is the defendant-prisoner concerned and who is now confined in the Arkansas State Penitentiary, petitioned the United States District Court for the Eastern District of Arkansas for a writ of habeas corpus. He based his case on the issue specified by the Supreme Court. After a hearing and the introduction of evidence his petition was denied. Bailey v. Henslee, D.C.E.D.Ark., 184 F.Supp. 298. Judges of this court granted the certificate of probable cause required by 28 U.S.C.A. § 2253 and the appeal is now before us.

Bailey, an adult Negro, was charged by information and convicted by an all-white petit jury in September 1956 (the March 1956 term) in the Circuit Court, First Division, Pulaski County, Arkansas, of the crime of rape (as defined in §§ 41-3401 and 41-3402 of Arkansas Statutes, 1947) committed in Little Rock on June 14, 1956. The jury did not render a verdict of life imprisonment in the state penitentiary at hard labor, as it had the right to do under §§ 41-3403 and 43-2153, and therefore, in line with the interpretation consistently given § 43-2153 by the Supreme Court of Arkansas,[1] Bailey was sentenced to death.[2] Since his conviction and sentence, his case has found its way several times into the appellate courts. We set forth in the margin, for background, its step-by-step progress.[3]

1. Kelley v. State, 133 Ark. 261, 202 S.W. 49, 54; Clark v. State, 169 Ark. 717, 729, 276 S.W. 849, 853–854; Smith v. State, 205 Ark. 1075, 172 S.W.2d 248, 249; Turner v. State, 224 Ark. 505, 275 S.W.2d 24, 31.

2. No date for execution has presently been fixed pursuant to § 43-2623.

3. (a) The first state court appeal. Bailey took an appeal from the judgment of conviction. Errors alleged concerned the sufficiency of the evidence, the denial of procedural motions, the reception and exclusion of evidence, and instructions. Most of these are matters not for our present concern. One assignment, however, had to do with the court's alleged error in overruling Bailey's motion "to quash the regular panel and the special panel of the petit jury"; another related to the court's alleged error "in not allowing the Jury Commissioners, for the March term 1952 to the March term 1956 inclusive, to testify."
The Arkansas Supreme Court upheld the refusal to permit testimony from the jury commissioners because (1) they "had not been subpoenaed * * * and were not present", and (2) no offer of proof had been made. It apparently also upheld the denial of the motion to quash because it regarded the deputy clerk's testimony, which was received, as, contrary to the defense's argument, not sufficient to show racial discrimination. All other issues were decided adversely to Bailey and the judgment was affirmed. Two justices would have granted a rehearing on a lesser offense instruction issue. Bailey v. State, 227 Ark. 889, 302 S.W.2d 796. Certiorari was denied by the United States Supreme Court. Bailey v. State of Arkansas, 355 U.S. 851, 78 S.Ct. 77, 2 L.Ed.2d 59.
(b) The second state court proceeding and appeal. Bailey then filed in the state court a petition for a writ of habeas corpus. He alleged denial of compulsory process as to the jury commissioners, in violation of the Arkansas (Article 2, § 10) and the United States (14th Amendment) Constitutions, and systematic limitation of Negroes in the selection of petit juries in the court where he was tried. This petition was amended, however, so that it recited that it was brought under Act 419 of the 1957 Acts of Arkansas (the Uniform Post-Conviction Procedure Act, codified as §§ 43-3101 to 43-3110 of the Arkansas Statutes and later repealed by Act 227 of the 1959 Acts of Arkan-

We emphasize, initially, that the question of Bailey's guilt is not now before us.[4] This is a situation where, as the United States Supreme Court once described the posture of another Arkansas case, " * * * what we have to deal with is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved." Moore v. Dempsey, 261 U.S. 86, 87–88, 43 S.Ct. 265, 67 L.Ed. 543.

While the three of us who have heard the present appeal would naturally be hesitant and disinclined to differ with conclusions reached by the panel (on which one of us sat) of this court which heard the first federal appeal in the case, Bailey v. Henslee, 8 Cir., 264 F.2d 744, and while we agree that the posture of that appeal and the record then before the court clearly called for the affirmance of the District Court's denial of the second petition for a writ of habeas corpus, and for the reasons set forth in that opinion, we are now confronted with the Supreme Court's order of January 18, 1960. We regard that order as a directive authorizing not only a new petition by this defendant but, as well, his making of a new record on the single issue

---

sas) and that his conviction was void or voidable in that he was denied the right of compulsory process. This revision evidently contained no reference to the issue of systematic limitation of Negroes in the selection of petit jury panels. At the hearing it was shown that prior to the trial the defense had requested the clerk of court to issue subpoenas for the jury commissioners and that the court had refused to allow the clerk to do this. The petition was denied. The Arkansas Supreme Court affirmed on the grounds (1) that the 1957 Act authorized a proceeding to set aside a sentence if "the alleged error has not been previously and finally litigated or waived" and (2) that under the circumstances of the case the compulsory process issue either had been finally litigated on the first appeal or had been waived. Bailey v. State, 229 Ark. 74, 313 S.W.2d 388. Again certiorari was denied by the United States Supreme Court but this time "without prejudice to an application for a writ of habeas corpus in an appropriate United States District Court." Bailey v. State of Arkansas, 358 U.S. 869, 79 S.Ct. 101, 3 L.Ed.2d 101.

(c) The first federal court proceeding and appeal. Pursuant to this suggestion by the Supreme Court, Bailey filed his second petition for a writ of habeas corpus. This one was presented to the United States District Court for the Eastern District of Arkansas. He alleged violation of his Fourteenth Amendment rights in the trial court's denial of compulsory process. Apparently in this federal proceeding itself there was no request for compulsory process, no witnesses appeared and no offer of proof was made. Judge Henley found that there had been a denial of such process by the state court but nevertheless denied the petition for the writ. He did so on the grounds that a state prisoner, under 28 U.S.C.A. § 2254, must first exhaust his available state remedies; that this required him to present to the Supreme Court of Arkansas on the first appeal his contention that there was error in the denial of his request for compulsory process; that this issue had not been litigated on the first state appeal and therefore had been waived; and that the attempt to raise the question under the 1957 Act procedure did not constitute an exhaustion of state remedies. Bailey v. Henslee, D.C.E.D.Ark., 168 F.Supp. 314. An appeal was taken to this court on the grounds of deprival of due process, non-waiver, and exhaustion of state remedies. This court, by a unanimous panel, affirmed and held that if there was error in the state court's refusal to have the jury commissioners subpoenaed, that was a matter for proper appeal to the State Supreme Court; that an application for habeas corpus cannot serve as an appeal; and that, not having urged the alleged error on appeal, it was waived and constituted a failure to exhaust state remedies. Bailey v. Henslee, 8 Cir., 264 F.2d 744. It was by way of response to the defendant's ensuing petition for certiorari (his third) from that action of this court that the order set forth in full at the beginning of this opinion was issued.

4. The evidence is set forth in the first opinion of the Supreme Court of Arkansas, Bailey v. State, supra, 227 Ark. 889, 302 S.W.2d 796, and no purpose would be served, even if it were pertinent, in repeating it here. This court has already observed, "The evidence of guilt is without substantial dispute". Bailey v. Henslee, supra, at page 746 of 264 F.2d.

now presented. The record has been made at the hearing and upon the evidence presented to Judge Young on the third and present application for the writ. We must base the conclusion we are now to reach on this new record unencumbered by limitations and shortcomings, if any, which may have characterized the prior record in this long continued litigation. We also regard the Supreme Court's order as a directive requiring us to proceed to the merits of the issue apart from any procedural considerations, such as exhaustion of state remedies, or other concern for orderly administration of criminal justice which thus far seem to have defeated this particular defendant.

Arkansas Statutes, 1947, as amended, provide the method of choosing jury commissioners and jurors.[5] This statutory procedure, of course, is followed in Pulaski County. The Circuit Court has a term in that county each September and March. § 22–310. As a matter of local practice, the Court there operates in three divisions. The First Division is concerned exclusively with criminal cases. The Second and Third Divisions are concerned with civil cases. Each division has its own jury commissioners and the juries selected by each set of commissioners operate only in the particular division. One exception to this division practice took place during the March 1956 term (the one at which the defendant was convicted) when 17 jurors were transferred from the Third Division to the First Division in connection with the trial of Emmett Earl Leggett;[6] afterward they were returned to the Third Division and were not used again in the First Division. This transfer had nothing to do with Bailey's case. Between 1939 and 1956 any juror who was selected for service in either the Second or the Third Division was legally qualified to serve in the First Division.

■ Most of the pertinent facts having to do with Negro representation on the Pulaski County panels are set forth in the opinion below at 184 F.Supp. 298, as well as in this court's first opinion in 264 F.2d 744, and these facts need not be reviewed in detail here. We mention only that there has been Negro representation, at least since 1952, on the regular panels of the First Division; that there has been no (or, at the most, one) instance of Negro representation on the alternate panels; that there is no posi-

5. A poll tax receipt is necessary to qualify a person as an elector. § 3–104.2. The circuit court selects 3 qualified commissioners at each term. § 39–201. The commissioners select from the electors of the county or its subdivision not less than 24 nor more than 36 "persons of good character, of approved integrity, sound judgment and reasonable information" to serve as petit jurors at the next term and, when ordered by the court, additional persons, so qualified and not exceeding 12 in number, as alternate petit jurors; these are set forth in separate lists which are certified, sealed and delivered to the judge who in turn delivers them to the clerk. §§ 39–208, 39–206 and 39–209. Within the 30 days preceding the next term, the clerk opens these lists and delivers copies of them to the sheriff who summons the persons named to attend the term. § 39–210. At the term a petit jury panel of 24 or 36, as the court may direct, is formed from the lists of jurors and alternates. § 39–215. The court also directs the commissioners to provide a list of not less than 25 names in addition to the regular panel and alternates for the use of the court in cases when the regular panel may be exhausted in impaneling any jury. §§ 39–220 and 39–220.1. This list is also sealed and is opened when the court determines that a panel cannot be completed from the list of regular and alternate jurors or that it will be exhausted. § 39–221. If it becomes evident that the special panel should be supplemented the court may recall the jury commissioners to perform this task. § 39–221.1. A person who has served on a regular panel of the petit jury is ineligible (with certain exceptions not pertinent here) to serve again for a period of 2 years. § 39–225. A prospective juror may be challenged for cause. § 39–228. Peremptory challenges are provided for, both as to civil cases, § 39–229, and as to criminal cases, §§ 43–1921 and 43–1922.

6. See Leggett v. State, 227 Ark. 393, 299 S.W.2d 59.

tive evidence of any Negro representation on the special panels; that since 1939 no Negro has served on any panel in the Second and Third Divisions; and that there has been, to an extent at least, some designation of race in the jury records. Bailey's Exhibit 1, to which reference is made in Judge Young's Table at page 301 of 184 F.Supp., also covers the 4 years from September 1956 through March 1960 and would show race representation for the court terms held during that period. Specifically, that exhibit (which the parties stipulated sets forth facts to which the present Deputy Clerk would have testified if called) shows the presence of from one to three Negroes on the regular panel in each of these later terms, the identity of all Negroes who have served since 1952, and the absence of any Negro's name among the alternates.[7]

So much for the facts. In turning to the legal aspects of the case, we feel that a preliminary review of established principles is in order:

▇▇ The right of a defendant in a criminal prosecution to a trial "by impartial jury" is guaranteed by Article 2, Section 10, of the Constitution of the State of Arkansas.[8] When a right to a jury trial exists,[9] then, as was emphasized many years ago by the United States Supreme Court, a jury's proper composition is fundamental:

"(T)he constitution of juries is a very essential part of the protection such a mode of trial is intended to secure. The very idea of a jury is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." Strauder v. West Virginia, 1879, 100 U.S. 303, 308, 25 L.Ed. 664.

▇▇ Strauder and a long line of succeeding Supreme Court cases hold that discrimination on the basis of race or ancestry in the selection of persons for service on grand or petit jury panels is violative of the equal protection clause of the Fourteenth Amendment.[10] A federal statute supplements this rule. 18

---

7. We recognize that the parties are not in accord as to the propriety of jury selection evidence here for the period after the March 1956 term. (While the State objected to the post-March 1956 data, the court reserved ruling on that objection; the record itself discloses the making of no formal ruling thereafter. Judge Young's Table does not embrace this data.) There is no question of the propriety of this kind of evidence for a suitable period before that term to the extent it bears upon the alleged plan of exclusion or limitation. Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76, and other cases cited in Footnote 10, infra. We are not here concerned with the question whether intent as a factor in crime is properly proved by evidence of prior acts of a kindred character. See, for example, Kansas City Star Company v. United States, 8 Cir., 240 F.2d 643, 650–651, certiorari denied 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438. Instead, we are here concerned with a pattern of jury selection which bears upon constitutional aspects of a criminal trial. We feel that it is not improper for us to consider, for what it is

worth, any evidence which, coupled and consistent with that as to prior terms, tends to show a pattern in jury selection. This we think, is demanded by the nature and possible result of this particular case, namely, the constitutionality of jury selection and the capital punishment which may befall the defendant.

8. Anderson v. State, 200 Ark. 516, 139 S.W.2d 396, 398; Lane v. State, 168 Ark. 528, 270 S.W. 974, 975.

9. The Fourteenth Amendment, of course, does not compel a state to provide trial by jury. Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 105, 54 S. Ct. 330, 78 L.Ed. 674; Palko v. State of Connecticut, 302 U.S. 319, 324, 58 S.Ct. 149, 82 L.Ed. 288; Fay v. People of State of New York, 332 U.S. 261, 288, 67 S.Ct. 1613, 91 L.Ed. 2043.

10. Neal v. Delaware, 103 U.S. 370, 394, 397, 26 L.Ed. 567; Bush v. Commonwealth of Kentucky, 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354; Gibson v. State of Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075; Carter v. State of Texas, 177 U.S. 442, 447, 20 S.Ct. 687, 44 L.Ed. 839; Rogers v. State of Alabama,

U.S.C.A. § 243. This does not mean, however, that a jury must have proportional representation of races in order to assure the equal protection of the laws. State of Virginia v. Rives, 100 U.S. 313, 322–323, 25 L.Ed. 667; Akins v. State of Texas, 325 U.S. 398, 403, 65 S.Ct. 1276, 89 L.Ed. 1692. Proportional racial limitation as such is forbidden. Cassell v. State of Texas, 339 U.S. 282, 286–287, 70 S.Ct. 629, 94 L.Ed. 839. A defendant has no right even to have his race represented on his jury.[11]

"What an accused is entitled to demand, under the Constitution of the United States, is that, in organizing the grand jury as well as in the empaneling of the petit jury, there shall be no exclusion of his race, and no discrimination against them, because of their race or color". Martin v. State of Texas, 200 U.S. 316, 321, 26 S.Ct. 338, 339, 50 L.Ed. 497.

Furthermore, inequality or disproportion in the number finally selected does not in itself show discrimination. Akins v. State of Texas, supra, at page 403 of 325 U.S., at page 1279 of 65 S.Ct.

Discrimination in a jury's selection must of course be proved; it is not to be presumed. Tarrance v. State of Florida, 188 U.S. 519, 520, 23 S.Ct. 402, 47 L.Ed. 572. The burden of establishing the discrimination is upon the defendant. Akins v. State of Texas, supra, at page 400 of 325 U.S., at page 1277 of 65 S.Ct. He may, however, establish a prima facie case of discrimination of this kind and, if he does, the burden then passes to the state to refute the discrimination. Evidence that Negroes have *never* served on a jury in the county or parish has been held to make a prima facie case.[12] Such a case is established

192 U.S. 226, 231, 24 S.Ct. 257, 48 L. Ed. 417; Martin v. State of Texas, 200 U.S. 316, 321, 26 S.Ct. 338, 50 L.Ed. 497; Norris v. State of Alabama, 294 U.S. 587, 589, 55 S.Ct. 579, 79 L.Ed. 1074; Hollins v. State of Oklahoma, 295 U.S. 394, 55 S. Ct. 784, 79 L.Ed. 1500; Hale v. Commonwealth of Kentucky, 303 U.S. 613, 616, 58 S.Ct. 753, 82 L.Ed. 1050; Pierre v. State of Louisiana, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757; Smith v. State of Texas, 311 U.S. 128, 129–130, 61 S.Ct. 164, 85 L.Ed. 84; Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L. Ed. 1559; Akins v. State of Texas, 325 U.S. 398, 400, 65 S.Ct. 1276, 89 L.Ed. 1692; Patton v. State of Mississippi, supra, at page 465 of 332 U.S., at page 185 of 68 S.Ct.; Brunson v. State of North Carolina, 333 U.S. 851, 68 S.Ct. 634, 92 L.Ed. 1132; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Ross v. State of Texas, 341 U.S. 918, 71 S.Ct. 742, 95 L.Ed. 1352; Brown v. Allen, 344 U.S. 443, 470, 73 S.Ct. 397, 97 L.Ed. 469; Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Reece v. State of Georgia, 350 U.S. 85, 87, 76 S.Ct. 167, 100 L.Ed. 77; Eubanks v. State of Louisiana, 356 U.S. 584, 585, 78 S.Ct. 970, 2 L.Ed.2d 991; See Carruthers v. Reed, 8 Cir., 102 F.2d 933, 939, certiorari denied 307 U.S. 643, 59

S.Ct. 1047, 83 L.Ed. 1523; Note Anderson v. State, 40 Ala.App. 509, 120 So.2d 397, certiorari denied 270 Ala. 575, 120 So.2d 414, certiorari granted 364 U.S. 877, 81 S.Ct. 165, 5 L.Ed.2d 100.

There have also been suggestions that it is violative of due process. United States ex rel. Goldsby v. Harpole, 5 Cir., 263 F.2d 71, 81, certiorari denied 361 U.S. 838, 850, 80 S.Ct. 58, 4 L.Ed. 2d 78; Wong Yim v. United States, 9 Cir., 118 F.2d 667, 669, certiorari denied 313 U.S. 589, 61 S.Ct. 1112, 85 L.Ed. 1544; See Fay v. People of State of New York, supra, at page 284 of 332 U.S. at page 1625 of 67 S.Ct., note 27; Hall v. United States, 83 U.S.App.D.C. 166, 168 F.2d 161, 164, 4 A.L.R.2d 1193, certiorari denied 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775.

11. Neal v. Delaware, supra at page 394 of 103 U.S.; Bush v. Commonwealth of Kentucky, supra, at page 117 of 107 U.S. at page 631 of 1 S.Ct.; Akins v. State of Texas, supra, at page 403 of 325 U.S., at page 1279 of 65 S.Ct.

12. Neal v. Delaware, supra, at page 397 of 103 U.S.; Norris v. State of Alabama, supra, at page 591 of 294 U.S., at page 580 of 55 S.Ct.; Pierre v. State of Louisiana, supra, at page 361 of 306 U.S., at page 540 of 59 S.Ct.; Hill v. State of Texas, at page 404 of 316 U.S., at page 1161 of 62 S.Ct.; Patton v. State

where race differentiating tickets are used to identify jurors and no Negro is selected in a panel of 60. Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244. The presence on the panel of a few Negroes who would probably be disqualified does not constitute sufficient rebuttal of the prima facie case. Reece v. State of Georgia, supra, at page 88 of 350 U.S., at page 169 of 76 S.Ct. Testimony of non-discrimination expressed in generalities is not sufficient to rebut.[13] Discriminatory selection in prior years does not nullify a present conviction if the selection of the jury for the current term is on a proper basis. "Former errors cannot invalidate future trials". Brown v. Allen, 344 U.S. 443, 479, 73 S. Ct. 397, 418, 97 L.Ed. 469.[14]

A state's restriction in the selection of jurors to males, freeholders, citizens, persons within certain ages, or those having educational qualifications, has been held not to violate the Fourteenth Amendment. Neal v. Delaware, 103 U.S. 370, 386, 26 L.Ed. 567; Gibson v. State of Mississippi, 162 U.S. 565, 580, 16 S.Ct. 904, 40 L.Ed. 1075. A restriction to those whose names appear on the tax list has been similarly upheld. Brown v.

Allen, supra, at page 474 of 344 U.S., at page 416 of 73 S.Ct.

In avoiding racial discrimination in the selection of jurors it is not enough for the jury commissioners or any other selecting agency to be content with persons of their personal acquaintance. Smith v. State of Texas, 311 U.S. 128, 132, 61 S.Ct. 164, 85 L.Ed. 84; Hill v. State of Texas, 316 U.S. 400, 404, 62 S.Ct. 1159, 86 L.Ed. 1559. It is "their duty to familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race and color". Cassell v. State of Texas, supra, at page 289 of 339 U.S., at page 633 of 70 S.Ct.

Although the question whether racial discrimination exists has been said to be a question of fact, this does not relieve a federal court of the duty to make independent inquiry and to determine whether a federal right has been denied.[15]

The Supreme Court of Arkansas itself has recognized these principles and has done so both in opinions affirming convictions against the challenge of unconstitutionality and in opinions reversing.[16]

---

of Mississippi, at page 466 of 332 U.S., at page 186 of 68 S.Ct.; United States ex rel. Goldsby v. Harpole, supra, at pages 77–78 of 263 F.2d. See Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866.

13. Norris v. State of Alabama, supra, at page 598 of 294 U.S. at page 583, of 55 S.Ct.; Hernandez v. State of Texas, supra, at pages 481–482 of 347 U.S. at pages 671–672 of 74 S.Ct.; Reece v. State of Georgia, at page 88 of 350 U.S., at page 169 of 76 S.Ct.; Eubanks v. State of Louisiana, supra, at page 587 of 356 U.S., at page 973 of 78 S.Ct.

14. See also Washington v. State, 213 Ark. 218, 210 S.W.2d 307, 309, certiorari denied 335 U.S. 884, 69 S.Ct. 232, 93 L. Ed. 423; Green v. State, 222 Ark. 222, 258 S.W.2d 56, 59; Moore v. State, 229 Ark. 335, 315 S.W.2d 907, 911, certiorari denied 358 U.S. 946, 79 S.Ct. 356, 3 L.Ed.2d 353.

15. Norris v. State of Alabama, supra, at pages 589–590 of 294 U.S., at page 580 of 55 S.Ct.; Pierre v. State of Louisiana,

supra, at page 358 of 306 U.S., at page 538 of 59 S.Ct.; Smith v. State of Texas, supra, at page 130 of 311 U.S., at page 165 of 61 S.Ct.; Akins v. State of Texas, supra, at page 402 of 325 U.S., at page 1278 of 65 S.Ct.; Patton v. State of Mississippi, supra, at page 466 of 332 U.S., at page 186 of 68 S.Ct.; Cassell v. State of Texas, supra, at page 283 of 339 U.S., at page 629 of 70 S.Ct.; Avery v. State of Georgia, supra, at page 561 of 345 U.S., at page 892 of 73 S.Ct.; Naupe v. State of Illinois, 360 U.S. 264, 272, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

16. Affirming: Smith v. State, 218 Ark. 725, 238 S.W.2d 649, 653; Washington v. State, supra, at page 310 of 210 S.W.2d; Dorsey v. State, 219 Ark. 101, 240 S.W. 2d 30, certiorari denied 342 U.S. 851, 72 S.Ct. 80, 96 L.Ed. 642; Moore v. State, supra, at pages 910–912 of 315 S.W.2d; Payne v. State, 226 Ark. 910, 295 S.W. 2d 312, 317–318, reversed on other grounds, 356 U.S. 560, 568–569, 78 S.Ct. 844, 2 L.Ed.2d 975; Williams v. State, 229 Ark. 1022, 322 S.W.2d 86, 90. Cf. Brown v. State, 213 Ark. 989, 214 S.W.

Our task here is to apply these principles to the facts before us. We should note, however, what we are *not* now concerned with: (1) There is no contention here that the Arkansas Constitution or statutes themselves authorize any discrimination on account of race in the selection of jurors. (2) There is no contention here that the statutory provision that jurors be "persons of good character, of approved integrity, sound judgment and reasonable information" is improper. (3) There is no complaint here resting on the fact that the charge against the defendant was by information rather than by indictment.[17] (4) There appears to be no contention on this appeal that the stipulated fact that since 1938 no Negro has ever been a jury commissioner in Pulaski County is itself unconstitutional discrimination.[18] (5) There is no contention here that the use of peremptory challenges to eliminate representatives of a defendant's race is improper.[19] (6) And there is no contention here that the Pulaski County three division system itself, with its separate sets of jury commissioners and panels, is invalid.

While the cited authorities establishing the general principles which govern here are numerous, four of the Supreme Court decisions afford special guidance for this case:

1. Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074. The jury commissioners, through their clerk, prepared a preliminary list of all males between stated ages as prescribed by statute. However, the designation "col." was placed after the names of Negroes on the list. The final grand jury roll was compiled from this list. There was testimony, which the court found acceptable and not overcome, that there were Negroes in the county qualified to serve. No Negro, however, had been called for many years. Similar practices appeared with respect to the selection of the petit jury in another county where the trial took place. The court held that testimony of non-discrimination by way of generalities was not sufficient to overcome the "strong prima facie case". The Negro defendant's rape conviction was reversed.

2. Smith v. State of Texas, supra, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84. Over 3,000 Negroes of the county met the qualifications prescribed by the state statutes for grand jury service. In a 7-year period, however, only 5 of 384 grand jurors who served were Negroes. Of the persons called for grand jury duty only 18 were Negroes and of these the names of 13 appeared last on the 16 man lists; the custom was to select the first 12 on the list. Of the 5 called who were not given No. 16, 4 were placed between Nos. 13 and 16 and one was No. 6. One of the 5 Negroes who served did so 3 times so only 3 individual Negroes served at all during the 7-year period. The court held that chance and accident alone

2d 240, and Eastling v. State, 69 Ark. 189, 62 S.W. 584. Reversing: Castleberry v. State, 69 Ark. 346, 63 S.W. 670; Ware v. State, 146 Ark. 321, 225 S.W. 626, 631; Bone v. State, 198 Ark. 519, 129 S.W.2d 240, 244; Haraway v. State, 202 Ark. 845, 153 S.W.2d 161, 163; Maxwell v. State, 217 Ark. 691, 232 S.W.2d 982; Green v. State, supra, at page 58 of 258 S.W.2d.

17. See Hurtado v. People of State of California, 110 U.S. 516, 538, 4 S.Ct. 111, 292, 28 L.Ed. 232; Gaines v. State of Washington, 277 U.S. 81, 86, 48 S.Ct. 468, 72 L.Ed. 793; Moore v. Henslee, 8 Cir., 276 F.2d 876, 878.

18. In any event this point has been decided by this court adversely to the defense in the recent case of Moore v. Henslee, supra, at page 879 of 276 F.2d, and we adhere to that holding. See also Maxwell v. State, supra, 217 Ark. 691, 232 S.W.2d 982, 983, and Payne v. State, supra, 226 Ark. 910, 295 S.W.2d 312, 317. We do not regard the incidental references to jury commissioners (as well as to grand and petit jurors) in Hernandez v. Texas, supra, at pages 476 and 481 of 347 U.S., at pages 669 and 671 of 74 S.Ct. as indicative of a contrary attitude on the part of the Supreme court.

19. See Hall v. United States, supra, at page 164 of 168 F.2d.

could not have brought about a listing of so few or been responsible for the numbering circumstances surrounding the names. The Negro defendant's rape conviction was reversed.

3. Avery v. State of Georgia, supra, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244. Jury commissioners selected prospective jurors from county tax returns. The names of white persons so selected were printed on white tickets and the names of Negroes on yellow tickets. A drawing was then made from a jury box. The tickets drawn were handed to a sheriff. He gave them to a clerk who arranged the tickets and typed up the final list of persons to serve. The judge who picked out the tickets testified that he practiced no discrimination. However, no Negro was selected to serve on a panel of 60. It was conceded that Negroes were available for jury service. The Negro defendant's rape conviction was reversed. Mr. Justice Frankfurter, in concurring, said, at page 564 of 345 U.S., at page 894 of 73 S.Ct.:

> " * * * (O)pportunity for working of a discriminatory system exists whenever the mechanism for jury selection has a component part, such as the slips here, that differentiates between white and colored; such a mechanism certainly cannot be countenanced when a discriminatory result is reached. The stark resulting phenomenon here was that somehow or other, despite the fact that over 5% of the slips were yellow, no Negro got onto the panel of 60 jurors from which Avery's jury was selected. The mind of justice, not merely its eyes, would have to be blind to attribute such an occurrence to mere fortuity." [20]

4. Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991. A jury commission made up a grand jury list of not less than 750 persons meeting the qualifications prescribed by the state statutes. Twice each year the commissioners drew the names of 75 persons from that group. This smaller list was then submitted to one of the criminal court judges who chose a new grand jury of 12 every six months. Some of these judges interviewed prospective jurors; others made the selection on the basis of personal knowledge or reputation. However, the evidence showed that only one Negro had been picked for grand jury duty within memory; that this one instance apparently resulted from a mistaken impression that he was white; that Negroes comprised about one-third of the population of the parish; that there was a substantial number of qualified Negroes; that since 1936 Negroes were included on each list submitted to the judges; and that for the following 18 years only the single Negro was chosen. The Negro defendant's murder conviction was reversed.

In the light of these decisions, this case may be a close one. On the one hand, there is no dispute that, whatever may have been the pre-1953 situation, there has been representation of the Negro race on the regular petit jury panel in each of the terms which have come and gone in the Pulaski County Circuit Court, First Division, from March 1953 through March 1960. The actual number of Negroes has varied from one to three.[21] There were at least 31 instances of a Negro juror on the regular panel of the 15 terms during the 7½ year period. One Negro may also have been named among the alternates for the September 1954 term. Obviously, then, there has been no *exclusion*, systematic, studied or otherwise, of Negroes from regular jury panels in the criminal division since 1952.

20. See, also Brown v. Allen, supra, at page 480 of 344 U.S., at page 419 of 73 S.Ct., and Williams v. State of Georgia, 349 U.S. 375, 382, 75 S.Ct. 814, 99 L.Ed. 1161.

21. While there is some disagreement in the evidence as to the exact Negro representation on certain of the panels under review, we agree with Judge Young's observation, at page 301 of 184 F.Supp., that the discrepancies are probably more apparent that real.

On the other hand, the record discloses the presence of the following:

1. Since 1939 no Negro has ever served on any kind of panel, regular, alternate or special, in the Second or Third Divisions of the Pulaski County Circuit Court. A fact of this kind, as has been noted above, would support a conclusion that a prima facie case of discrimination in the selection of juries in these civil divisions has been established.

2. The First Division's panels of alternates, from 1952 to 1960, with one possible exception, contained no Negro name. Here again it can be said that this fact creates an unrebutted prima facie case of discrimination in the selection of these alternates.

3. The 5 special panels assembled for the March 1956 term in the First Division, which contained an aggregate of approximately 450 names, included according to the stipulated Exhibit 1, the name of no Negro.[22]

4. Fourteen of the persons on the defendant's own petit jury panel of 37 names came from those 2 special panels consisting exclusively of white persons. In a not dissimilar situation the Supreme Court of Arkansas has said:

"The State contends, and not without attention-compelling force, that commingling of the original thirteen jurors with the panel containing Negroes gave to the defendant in principle the identical opportunity he was contending for: that is, the right to select twelve names from a list partially composed of members of his race. The answer is that we are dealing primarily with the Constitution as distinguished from a particular defendant. * * * But there is no doubt that the local system of jury selection resulted in systematic exclusion of Negroes in violation of the Fourteenth Amendment, * * *

"Our own cases, and decisions by the Supreme Court of the United States, are too clear for misunderstanding." Maxwell v. State, 217 Ark. 691, 232 S.W.2d 982, 983.

5. Over the years presented no more than 3 Negroes appeared in any regular panel of 24 persons. At the most (6 of 15 times) therefore, Negroes have represented one-eighth of the total. This is a little less than what the evidence seems to show, at least for 1954 and 1955, to be the proportion between the races for persons holding the qualifying poll tax receipts.[23] We recognize, of course, that mere lack of identity in proportions is not in itself unconstitutional.[24]

6. There is an unexplained and seemingly unusual amount of repetition of the names of Negroes which do appear on the regular panels from 1953 to 1960 and which in the aggregate made up the 31 instances. A. E. Nabors, who was named in September 1955, was named again in September 1957 and in March 1960. D. B. Lacefield, who was named in September 1955, was also named in March 1958 and March 1960 (he had been named,

22. There is some indication that certain of these special panel lists were not opened. It is clear, however, that 2 were opened, that these contained about 199 names, and that the name of no Negro was included. This substantial number of special panel jurors was not occasioned by the Bailey litigation but by the Leggett murder case noted above. Leggett was white and we are not concerned here with any problem of his constitutional rights in jury selection. See Haraway v. State, 203 Ark. 912, 159 S.W.2d 733, certiorari denied 317 U.S. 648, 63 S. Ct. 42, 87 L.Ed. 521; Fay v. People of State of New York, supra, at page 287 of 332 U.S. at page 1627 of 67 S.Ct.; Grif-

fin v. State, 183 Ga. 775, 190 S.E. 2, 4; State v. Lea, 228 La. 724, 84 So.2d 169, 171, certiorari denied 350 U.S. 1007, 76 S. Ct. 655, 100 L.Ed. 869; State v. Dierlamm, 189 La. 544, 180 So. 135, 136; Nanfito v. United States, 8 Cir., 20 F.2d 376, 378.

23. See 8 Cir., 264 F.2d 744, 745. There is some testimony to the effect that the stated percentage figures between whites and Negroes is little more than "a pure and simple guess."

24. State of Virginia v. Rives, supra, at pages 322–323 of 100 U.S.; Akins v. State of Texas, supra, at page 403 of 325 U.S., at page 1279 of 59 S.Ct.

too, in March 1951). Simon Herron, who was named in March 1956, was also named in September 1958. W. E. Hayes, who was named in September 1955, was named again in March 1959. I. S. Mc-Clinton, who was named in March 1957, was also named in September 1959 (he had been named, too, in March 1951). Vilma T. Nabors, who was named in September 1956, was the wife of A. E. Nabors. The 31 names for the 1953–60 period thus come down to only 24 different persons and 2 of these are husband and wife.[25]

7. The Pulaski County poll tax receipts were given racial marks. They contained a "C" when the holders were known to be colored and a "W" when they were known to be white. Where race was unknown, as was often the case when payment of the tax was made by mail, they were marked "W".[26]

8. The jury commissioners, except, perhaps, for two terms, themselves identified names of Negroes on the lists by the designation "(C)" or "(Col)" or "(Colored)". Why this was done does not appear. There is testimony, as is usually the situation in these cases, that this was of no persuasion so far as the jury commissioners were concerned.

9. The testimony of the jury commissioners as to their efforts to ascertain the names of qualified Negroes leaves much to be desired.[27]

■ The foregoing facts, taken in the aggregate, lead us to the conclusion that a prima facie case of limitation of members of the Negro race in the selection of this defendant's petit jury panel was established, that the State did not rebut it, and that the District Court's conclusion to the contrary was clearly erroneous. Here there appears to be a definite pattern of race selection; here there is a device for race identification with its possibility of abuse; here there is exclusion from the alternate panels and from the special panels actually used; here there is an element of recurrence of the same Negro names; and here there is the additional factor, for what atmosphere it may provide, of exclusion from the civil divisions' panels.

■ Our determination that the procedure followed in the defendant's trial

25. For the period prior to the term during which the defendant was convicted repetition of a Negro's name apparently occurred only once.

26. As to this the County Tax Collector testified:
"* * * We do not feel that a colored person, in the majority of instances, would feel offended if they got back a poll tax marked 'W', where on the other hand, it is completely reversed, if a white person would get back a poll tax receipt through the mail marked 'colored', they would have a great resentment. * * *"

27. The following appears with respect to Commissioner McArthur:
"Q. (Mr. Williams, resuming) How many Negroes do you know in Pulaski County? A. I really couldn't say. I've lived here off and on all my life, thirty-eight years, and I'd say I know as much as anyone else in this court-room, maybe more.
 * * * * *
"Q. My question was whether or not there was any effort made to acquaint yourself with Negro poll tax holders, any special effort outside of the deliberation? A. My answer would be no. If they were on the list of qualified electors, they were qualified as far as we were concerned, white or colored.
"Q. You made no special effort? A. No special effort."
As to Commissioner Cavin, the following took place:
"Q. Mr. Cavin, was there any special effort made on your part to acquaint yourself with Negro poll tax holders in Pulaski County? A. No. I feel like I know as many colored people in Pulaski County as any other white person, probably more."
With respect to Commissioner Davis, the following took place:
"Q. Mr. Davis, you did not make any special effort to see that Negroes were represented on this jury panel, did you? A. No special effort either way.
"Q. You didn't make any special effort? A. Either way.
"The Court: 'Either way'—I (don't) think I know what you mean, Mr. Davis. Will you explain that— A. I didn't make any effort to put them on or to not put them on."

does not measure up to the standards of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States, as interpreted by the Supreme Court, does not mean that he need go free. The State of Arkansas is at liberty to try him again upon the same information by procedure which meets constitutional requirements. That this may result in further time consuming proceedings, both trial and appellate, before there can be an end to Bailey's case, is, of course, regrettable. Long delays in the attainment of an ultimate decision "may show a basic weakness in our government system",[28] may present "a sorry chapter",[29] and may be exasperating at times. Nevertheless, it is to the credit and not to the shame of our system that, no matter what the alleged crime may be, a defendant in this nation will receive a trial conducted with the safeguards guaranteed by our fundamental law. The Fifth Circuit recently said: "The very heinousness of the crime and the weight of the physical evidence made it all the more necessary that the defendant's constitutional rights be not lightly or unadvisedly surrendered". United States v. Harpole, 5 Cir., 263 F.2d 71, 83, certiorari denied 361 U.S. 838, 850, 80 S.Ct. 58, 4 L.Ed.2d 78. Mr. Chief Justice Stone summarized the situation in Hill v. State of Texas, supra, at page 406 of 316 U.S., at page 1162 of 62 S.Ct.:

"A prisoner whose conviction is reversed by this Court need not go free if he is in fact guilty, for Texas may indict and try him again by the procedure which conforms to constitutional requirements. But no State is at liberty to impose upon one charged with crime a discrimination in its trial procedure which the Constitution, and an Act of Congress passed pursuant to the Constitution, alike forbid. Nor is this Court at liberty to grant or withhold the benefits of equal protection, which the Constitution commands for all, merely as we may deem the defendant innocent or guilty * * *. It is the State's function, not ours, to assess the evidence against a defendant. But it is our duty as well as the State's to see to it that throughout the procedure for bringing him to justice he shall enjoy the protection which the Constitution guarantees. * * * Equal protection of the laws is something more than an abstract right. It is a command which the State must respect, the benefits of which every person may demand. Not the least merit of our constitutional system is that its safeguards extend to all—the least deserving as well as the most virtuous."

The State of Arkansas is entitled to a reasonable time within which to retry this defendant for the crime charged against him. Pending a retrial by the State, the District Court is directed to grant a stay of execution. If he is retried, the Court is directed to enter a dismissal of Bailey's present petition for release on habeas corpus. If he is not retried within nine months from the filing date of this opinion, the District Court is directed to grant Bailey's petition for a writ of habeas corpus.

The judgment appealed from is reversed and the case is remanded for further proceedings consistent with this opinion.

28. See Chessman v. Dickson, 9 Cir., 1960, 275 F.2d 604, 607.

29. See Chessman v. Teets, 354 U.S. 156, 164, 77 S.Ct. 1127, 1132, 1 L.Ed.2d 1253.